Daniel Benjamin MELENDEZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–92–00588–CR, 04–92–00589–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 5, 1994.

Thomas G. Keyser and Andrew B. Logan, San Antonio, for appellant.

Steven C. Hilbig, Cr. Dist. Atty. and Daniel Thornberry, Asst. Cr. Dist. Atty., San Antonio, for appellee.

Before BUTTS, BIERY and RICKHOFF, JJ.

BUTTS, Justice.

Appellant was convicted of two offenses: aggravated sexual assault and murder. After a jury trial of the cases, which were tried together, the jury found appellant guilty and assessed punishment at imprisonment for life and a $10,000 fine in each case. We affirm.

The requirements and procedures governing the juvenile court's waiver of jurisdiction and discretionary transfer to criminal court are delineated in Tex.Fam.Code Ann. § 54.02 (Vernon 1986 & Supp.1994).[1] Not yet 17 years of age at the time of the commission of the offenses, appellant was tried as an adult after a hearing on the State's petition to transfer the juvenile to criminal district court.

At a pretrial motion hearing in the criminal court, appellant collaterally attacked the transfer procedure, claiming the juvenile court had no jurisdiction to transfer him to the adult criminal court.[2] He argues that the criminal court therefore lacked jurisdiction.

In his first point of error appellant contends the trial court erred by not granting his Motion to Quash for Failure to Meet Notice Requirements in the Juvenile Certification and Transfer Proceeding. He argues that failure to set the hearing within 10 days

1. All references are to the Texas Family Code unless otherwise noted.

2. A direct appeal could have been taken from the order of the juvenile court transferring the juve-

nile to criminal court. See Tex.Fam.Code Ann. § 56.01(a), (b), (c)(1)(A) (Vernon 1986 & Supp. 1994).

mandates reversal and cites Tex.Penal Code Ann. § 8.07 (Vernon Supp.1994) and sections 54.02 and 53.05 of the family code.

■ Section 53.05 of the family code provides that after a petition is filed, the juvenile court shall set a time for the hearing. If the child is in detention, "[t]he time set for the hearing shall not be later than 10 days after the day the petition was filed." It is undisputed that appellant was in detention when the petition was filed. It is argued that failure to set the hearing within the prescribed 10 days resulted in jurisdictional error.

Only the statement of facts of that hearing, along with the instruments reflecting the dates the petition was filed, the date of the transfer hearing, and date of order of transfer, are before the reviewing court. The State filed the petition on May 3, 1991, and the transfer hearing was conducted on June 6, 1991. A psychological examination was conducted on May 6 and 7; however, the record does not contain the resultant report or its date of filing with the court. Further, any final diagnostic study or evaluation is not in the record. *See* § 54.02(d) which requires that prior to the hearing, the juvenile court shall order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense. There is nothing in the record to show the length of time required for the studies and investigation. In a collateral attack based on lack of jurisdiction of the juvenile court to hear the transfer proceedings, the burden is on appellant to provide a record to support his argument.

■ This same argument has been rejected by Texas courts. The supreme court agreed with the Dallas court of appeals when it refused to interpret section 53.05 as imposing a jurisdictional limitation requiring dismissal of the proceeding absent waiver of the 10 day requirement or a ground for postponement being shown by the record. *L.L.S. v. State,* 565 S.W.2d 252, 255–56 (Tex.Civ. App.—Dallas), *writ ref'd n.r.e. per curiam,* 569 S.W.2d 495 (Tex.1978).

The San Antonio court of appeals agreed with this interpretation and held that the 10 day requirement does not impose a jurisdictional limitation requiring dismissal of the proceedings in the absence of a timely setting. *Williams v. State,* 834 S.W.2d 613, 614 (Tex.App.—San Antonio 1992, no writ). As in the *Williams* case, the present record does not reflect that this matter was complained about or a setting requested during the time the proceedings were under the control of the juvenile court. The delay in the present case was relatively short from the date of the filing of the petition until the transfer hearing—34 days; and there is no showing of prejudice resulting from it. *See In re S.D.,* 667 S.W.2d 820, 821 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.); *In re M.I.L.,* 601 S.W.2d 175, 176 (Tex.Civ.App.—Corpus Christi 1980, no writ). The statutorily mandated time period within which to set a hearing is directory rather than jurisdictional, and the juvenile court does not lose jurisdiction absent a timely setting. *Williams v. State,* 834 S.W.2d at 615; *In re S.D.,* 667 S.W.2d at 821.

The criminal court obtained jurisdiction of the case and did not abuse its discretion in denying the motion to quash. The first point is overruled.

■ In the second point of error it is argued that the trial court should have suppressed appellant's oral statements.

The sufficiency of the evidence to support the conviction is not challenged. On April 2, 1991, Raquel Tovar's body was discovered in a trash dump. She had been raped and murdered; the evidence showed her mouth and nose had been taped closed by appellant. Sergeant Earnest Celaya of the San Antonio Police Department traced Raquel's previous night's activities. Joseph Rae's and appellant's names were obtained, but neither was a suspect then. Celaya took witness statements from them, but some inconsistencies existed. Joseph gave a second statement, and Michael Smiley and Otis Greer were identified as possible witnesses.

The next evening Celaya received a telephone call from appellant, who was crying and who said he had more information. He was asked to come to the police station and

agreed to do so; Celaya and another officer picked him and his father up and drove them to headquarters. They did not handcuff appellant.

At headquarters appellant talked to Celaya alone and told him, "I killed her. I didn't mean to kill her." Celaya stated he did not ask any questions before that was said, but he had told appellant there were inconsistencies in his statement. Celaya then took appellant before a magistrate who warned him, *see* § 51.09, but appellant refused to give a statement. The detective drove appellant home. This was April 3.

Ceyala testified that appellant was never handcuffed or placed under arrest. He had not been a suspect before he made the oral statement. On April 4 the officer again talked with Joseph Rae and also to Michael Smiley for the first time. After that he obtained warrants to arrest Otis Greer and appellant.

Section 51.09 of the family code governs the admission of statements by juveniles. Before appellant's trial in 1991 the Legislature amended the statute to add this provision:

(d) This section does not preclude the admission of a statement made by the child if:

\*     \*     \*     \*     \*     \*

(2) the statement does not stem from custodial interrogation; or

(3) without regard to whether the statement stems from custodial interrogation, the statement is voluntary and has a bearing on the credibility of the child as a witness.

The amendment to section 51.09 applies to proceedings at appellant's trial since the statute in effect on the date of trial, a rule of procedure, controls that litigation. *Wilson v. State,* 473 S.W.2d 532, 535 (Tex.Crim.App. 1971). The words are virtually identical to those found in section 5 of article 38.22, Tex.Code Crim.Proc.Ann. (Vernon 1979). It is true that the former law required courts to hold inadmissible a juvenile's oral statement even in a non-custodial situation because of failure to comply with pre-amendment section 51.09(b). *See e.g. Dixon v. State,* 639

S.W.2d 9, 10–11 (Tex.App.—Dallas 1982, no writ) (oral statement of juvenile to nurse held inadmissible). Now the legislative addition of subsection (d) makes such an oral statement admissible.

A statement is not elicited as a result of "custodial interrogation" if the statement is not taken while the defendant is in custody. Thus, an unwarned oral statement will be admissible if made by a person who voluntarily comes to the police station. *See California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Oregon v. Mathiason,* 429. U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Meek v. State,* 790 S.W.2d 618, 621–22 (Tex.Crim.App.1990); *Dancy v. State,* 728 S.W.2d 772, 777–79 (Tex. Crim.App.), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987). Moreover, even when the suspect is in custody, the statement will still be admissible if it was not elicited by questioning or its counterparts. *See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *Stevens v. State,* 671 S.W.2d 517, 520 (Tex. Crim.App.1984).

We hold appellant's statements were admissible because they were voluntary. Even if we assume they were not voluntary, they would still be admissible since the uncontroverted evidence shows they were not made in response to interrogation. *Id.; Sanchez v. State,* 589 S.W.2d 422, 423 (Tex.Crim.App. 1979). The point of error is overruled.

The judgment is affirmed.