TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-98-00654-CV







In the Matter of R. J. H.








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-15,235, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING










DISSENTING OPINION







 The majority today creates a new standard for the admission of a noncustodial
statement made by a juvenile. Because I believe the record supports the trial court's conclusion
that the oral statements made by appellant several days after the crime were not the product of
custodial interrogation and are voluntary and admissible, I respectfully dissent. Appellant does
not assert that he was in custody at the time he made the oral statements; rather, because the initial
written statement was inadmissible under the Family Code, he contends that the subsequent oral
statements were tainted. The State argues that appellant was not in custody at the time he made
the oral statements and that the statements were freely and voluntarily given. Because appellant's
voluntary statements did not stem from custodial interrogation and were not the product of a
constitutional violation, the State thus contends that non-compliance with section 51.09 of the
Family Code does not render the subsequent statements inadmissible. The record clearly supports
the State's position.

 Section 51.095(b) of the Family Code provides that the requirements of section
51.095(a) do not preclude the admission of a statement made by a juvenile if the statement does
not stem from custodial interrogation. See Tex. Fam. Code Ann. § 51.095(b)(1) (West Supp.
2000). The words of the Family Code pertaining to juveniles are virtually identical to those found
in section 5 of article 38.22 of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc.
Ann. art. 38.22, § 5 (West 1979).(1) Custodial interrogation is questioning initiated by law
enforcement after a person has been taken into custody or otherwise deprived of his freedom in
any significant way. A statement is not elicited as a result of custodial interrogation if the
statement is not taken while the defendant is in custody. In determining whether a juvenile is in
custody, we determine "whether, based upon the objective circumstances, a reasonable child of
the same age would believe her freedom of movement was significantly restricted." In re L.M.,
993 S.W.2d 276, 289 (Tex. App.--Austin 1999, pet. denied). In the absence of custodial
interrogation, due process is violated only by confessions that are not "the product of a rational
intellect and a free will." Mincey v. Arizona, 437 U.S. 385, 398 (1978). The Family Code does
not preclude the admission of a juvenile's statement if the statement does not stem from custodial
interrogation. See Tex. Fam. Code Ann. § 51.09(d)(2) (West 1996); Melendez v. State, 873
S.W.2d 723, 725 (Tex. App.--San Antonio 1994, no pet.).

 In Laird v. State, 933 S.W.2d 707, 710 (Tex. App.--Houston [14th Dist.] 1996,
pet. ref'd), the juvenile defendant, after being arrested in Pennsylvania and read his rights, was
told by the Pennsylvania officer that he was not going to be asked any questions. Laird hung his
head and stated, "I know what I did. I'm sorry." Id. Several hours later, he was taken to a
juvenile detention facility. See id. On appeal, Laird argued that his statement was inadmissible
because he was illegally detained in an adult cell, rather than in a juvenile processing office as
required by Texas law, and that he was held too long before he was taken to juvenile authorities. 
See id. at 712. The court held that the statement was admissible based on section 51.09(d)(2),
which allows an oral statement to be admitted if it is not in response to custodial interrogation. 
See id. at 714.

 In Melendez, the defendant called a police officer, saying that he had additional
information regarding a murder. Melendez agreed to come to the police station, and an officer
picked him up and drove him to police headquarters. See 873 S.W.2d at 725. At the station, the
defendant admitted killing the victim. See id. The officer testified that he had not asked any
questions before that statement, but he had told Melendez that there were inconsistencies in a prior
statement given by Melendez. See id. The defendant was then taken before a magistrate for
warnings, but he refused to give a statement. See id. The court of appeals upheld the
admissibility of the statement even though the juvenile was in custody because it was not elicited
by questioning. See id.

 The majority is correct that even in the absence of custody, due process may be
violated by admissions that are not voluntarily given. See Wolfe v. State, 917 S.W.2d 270, 282
(Tex. Crim. App. 1995). The corollary is also true, however, that a volunteered statement even
in custody is admissible. So, too, an unwarned oral statement will be admissible if made by a
person who voluntarily comes to the police station. See California v. Beheler, 463 U.S. 1121
(1983); Meek v. State, 790 S.W.2d 618, 621-22 (Tex. Crim. App. 1990); Melendez, 873 S.W.2d
at 725. In the present case, because the juvenile was not in custody at the time the oral statements
were made, the proper inquiry is whether the statements were voluntarily made. See Wolfe, 917
S.W.2d at 282; In re V.M.D., 974 S.W.2d 332, 346 (Tex. App.--San Antonio 1998, pet. denied).

 A statement is not voluntary if there was "official, coercive conduct of such a nature
that any statement obtained thereby was unlikely to have been the product of an essentially free
and unconstrained choice by its maker." Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim.
App. 1995). In judging whether a juvenile confession or statement is voluntary, the trial court
must look to the totality of circumstances. See Darden v. State, 629 S.W.2d 46, 51 (Tex. Crim.
App. 1982). While the majority invokes the correct test, it misapplies it in this case.

 In the present case, there is no evidence in the record of any coercive conduct
committed by law enforcement in connection with either the written statement or the subsequent
oral statement. To the contrary, upon his arrival at the station house, appellant was immediately
uncuffed. The DPS trooper notified appellant's father of his son's detention and discouraged
appellant from talking about the circumstances of his detention until his father arrived. While
waiting for his father, appellant was allowed to walk around freely, go to the bathroom, and get
a beverage. Because the father did not have transportation, the officers brought the father to the
station and advised him of the circumstances of the son's detention. The officer advised appellant
of his Miranda rights in the presence of his father, and appellant and his father signed a statement
indicating they understood those rights. Appellant signed a statement acknowledging his
involvement in the crime and was released into the custody of his father. The officer then
transported the father and son to their home. Approximately four days to a week later, appellant
initiated a telephone call to the officer. The evidence is undisputed that, in the days following the
detention, appellant initiated contact with Officer Elder and that appellant called more than once. 
Appellant told the officer that his cousin was not involved in the burglary and that appellant alone
was responsible. 

 The majority concludes that, even though appellant was not in custody, the prior
inadmissible statement "tainted" the subsequent oral statements on the "cat-out-of-the-bag" theory. 
The majority's reliance on the all-but-discredited "cat-out-of-the-bag" theory is misplaced.(2) The
majority reasons that because a written statement appellant gave to police was not obtained in
accordance with the dictates of Family Code section 51.09(b), the oral statements made by
appellant several days later were nevertheless rendered involuntary because appellant "may feel
he has nothing to lose by making additional incriminating statements" and "so burdened by the
psychological pressure of the first confession, his resolve to remain silent may be broken." As in
Griffin, where the court of criminal appeals refused to suppress the statement because of a lack
of "more definite evidence" that the prior statement "played an actual role in [Griffin's] volitional
processes," see Griffin, 765 S.W.2d at 431, in this case there is no evidence to support the
majority's conclusion that the giving of the written statement overcame appellant's resolve not to
speak further to police or that it led to the subsequent statement in any way. 

 The cases cited by the majority do not support its application in the instant case. 
In Griffin, the juvenile made oral statements at the time of her arrest which were later suppressed
because she had not been taken before a magistrate and advised of her rights in compliance with
section 51.09(b)(1). See id. at 424-25. Several hours later, after she had been advised of her
rights, she gave a written statement. See id. at 425. Applying a "totality of the circumstances"
test, rather than the "cat-out-of-the-bag" theory, the court of criminal appeals upheld the
admissibility of the second statement. See id. at 430-31.

 Likewise, in Rodriguez v. State, 968 S.W.2d 554, 559 (Tex. App.--Houston [14th
Dist.] 1998, no pet.), the court upheld the admissibility of a written statement while suppressing
the initial, unwarned oral statements. Rodriguez argued, as R. J. H. does here, that the mere
existence of his oral confession given without first appearing before a magistrate tainted his
subsequent written statement and rendered it inadmissible. See id. at 556. The appeals court,
relying on Griffin, found that the illegality of the initial oral statement to the investigator did not
taint the subsequent written statement. The court stated: "The rationale of Griffin, and its federal
predecessors Bayer and Elstad, is that there is no presumption mandating such an inferential leap. 
Rather there must be evidence in the record that Rodriguez would not have given the written
confession but for the earlier one." Id. at 558. Thus, in neither of the cases cited by the majority
is the "cat-out-of-the-bag" theory applied; both rely entirely on a totality-of-the-circumstances test
under the Due Process clause.

 The majority suggests that because the oral statements were made in the "context
of a request that Elder allow appellant to revise his earlier written confession," that the "connection
between the prior inadmissible statement and the subsequent statements is thus undeniable." They
conclude that "[t]his direct connection shows that the prior statement played an actual role in
appellant's volitional processes." Because it is obvious that all relevant statements relate back to
the crime in issue, it necessarily follows that the statements are connected. It does not follow,
however, that the connection is a causal one. Any "causal connection" between the two statements
is "speculative and attenuated at best." Oregon v. Elstad, 470 U.S. 298, 313 (1985). As Justice
Jackson, who originated the "cat-out-of-the-bag" theory in Bayer, recognized: "[A] later
confession may always be looked upon as fruit of the first. But this Court has never gone so far
as to hold that making a confession under circumstances which preclude its use, perpetually
disables the confessor from making a usable one after those conditions have been removed." 
United States v. Bayer, 331 U.S. 532, 540-41 (1947). The Bayer Court went on to hold a second
confession voluntary and admissible, and, further, that the "cat-out-of-the-bag" theory was not
controlling.

 When the majority turns to the totality-of-circumstances test, they misapply it to the
facts found by the court on this record. In Elstad, the Supreme Court addressed a similar issue. 
They wrote: "This Court has never held that the psychological impact of a voluntary [but
unwarned] disclosure of a guilty secret qualifies as state compulsion or compromises the
voluntariness of a subsequent informed waiver." 470 U.S. at 312. The admissibility of the
subsequent statement turns in these circumstances solely on whether it is knowingly and
voluntarily made. See id. at 308-10. For this inquiry, the fact finder must examine the
surrounding circumstances and the entire course of police conduct with respect to the suspect in
evaluating the voluntariness of his statements. See id. at 318.

 Turning to the record in the trial court, we note that appellant made statements at
four different stages: at the time of the initial stop, at the station house before his father arrived,
in the presence of his father after he was advised of his rights, and several days later. The
evidence showed that appellant was sixteen at the time of the offense; he was the father of a two-year-old child; he was on probation for a criminal offense; he was apprehended with his adult
cousin in possession of recently stolen property in a bag on his lap; and, at the time of his
apprehension, he possessed beer and marijuana and was riding in a car that was apparently stolen.(3)
The officer testified that he tried to explain to appellant the seriousness of the possible charge;
appellant's father indicated the father understood, but that appellant did not believe that anything
would happen to him because he was a juvenile. Appellant volunteered that when he failed to
attend probation meetings for his prior offense, nothing had happened to him. Based on a finding
that the appellant was in custody, the trial court suppressed statements made during the first three
stages.(4) Appellant did not testify nor did he elicit any testimony that any type of coercive conduct
was used by the police in the station house that could somehow taint the statements he made days
later when he was not in custody and initiated the contact.

 Here, appellant's initial written confession was found to be inadmissible because
it did not comply with section 51.09 of the Family Code. It may be that two statements, the first
taken under coercive circumstances, are so closely related in time and place that the first
necessarily controls the character of the second. In this cause, however, appellant's first statement
was not deemed inadmissible because actually coerced. "Thus, this is not a case of involuntariness
of an initial confession spilling over to render a second confession involuntary as well." Griffin,
765 S.W.2d at 428.

 I believe that a careful review of the record clearly demonstrates that there is no
causal connection between the statements, and there certainly is no evidence that appellant's will
was compromised or overborne in any respect. Nor is there any evidence in the record that
appellant gave any consideration to his initial statement being used against him. To the contrary,
the State contends, and the record supports, that appellant sought to take full responsibility for the
offense because his prior experience with the juvenile justice system had taught him that nothing
would happen to him. When neither the initial nor the subsequent admission is the product of
coercion, I find little justification for permitting the highly probative evidence of appellant's
confession to be lost to the fact finder. Based on the intervening days, the juvenile's experience
with the system, his maturity, his initiation of contact with the police officer, and the absence of
custody or any coercion, I would find that the statements were voluntary. For these reasons, I
dissent.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Filed: October 19, 2000

Publish


1. "Nothing in this article precludes the admission of a statement . . . that does not stem
from custodial interrogation or of a voluntary statement, whether or not the result of custodial
interrogation, that has a bearing upon the credibility of the accused as a witness . . . ." Tex. Code
Crim. Proc. Ann. art. 3822, § 5 (West 1979). The language of Family Code section 51.09(b)(2)
was added in 1975 to make the oral statements of juveniles admissible on the same terms as the
oral statements of adults. See Griffin v. State, 765 S.W.2d 422, 426 (Tex. Crim. App. 1989);
Dixon v. State, 639 S.W.2d 9, 11 (Tex. App.--Dallas 1982, no pet.); Melendez v. State, 873
S.W.2d 723, 725 (Tex. App.--San Antonio 1994, no pet.).
2. In Griffin, the court of criminal appeals severely restricted application of the theory in
Texas. 765 S.W.2d at 427. Acknowledging its "superficial plausibility," the court rejected the
test in Fuller v. State, 829 S.W.2d 191, 204 (Tex. Crim. App. 1992). Even the Supreme Court,
which originated the principle in United States v. Bayer, 331 U.S. 532 (1947), did not apply it in
that case, and more recently confirmed it to have no application in the absence of coercion of the
first statement. Oregon v. Elstad, 470 U.S. 298, 312 (1985). I question as well whether it has
any application to the facts in this case. In each of the cases cited by appellant, the defendant
made oral unwarned admissions that were then followed by the giving of a written statement. In
the present case, appellant first gave a written warned statement which was followed days later by
oral admissions not in response to questioning. As a factual matter, appellant's posture is ill-suited
to the argument that his subsequent oral statements made when he initiated contact with Officer
Elder were somehow precipitated by the giving of his earlier statement made in the presence of
his father and the police officer. In any event, there is considerable difference between
succumbing to a demand for information in the station house and volunteering that information
days later while not in custody and without any inducement whatsoever.
3. At the time of the traffic stop, Officer Michael Scheffler of the Texas Department of
Public Safety testified that as he approached appellant's side of the vehicle, he smelled marijuana. 
After finding marijuana in the ashtray, the officer testified that appellant acknowledged it was his.
4. The State did not appeal the suppression of statements made during the first three stages. 
Thus, the only statements at issue are the ones made several days later.


 that any type of coercive conduct
was used by the police in the station house that could somehow taint the statements he made days
later when he was not in custody and initiated the contact.

 Here, appellant's initial written confession was found to be inadmissible because
it did not comply with section 51.09 of the Family Code. It may be that two statements, the first
taken under coercive circumstances, are so closely related in time and place that the first
necessarily controls the character of the second. In this cause, however, appellant's first statement
was not deemed inadmissible because actually coerced. "Thus, this is not a case of involuntariness
of an initial confession spilling over to render a second confession involuntary as well." Griffin,
765 S.W.2d at 428.

 I believe that a careful review of the record clearly demonstrates that there is no
causal connection between the statements, and there certainly is no evidence that appellant's will
was compromised or overborne in any respect. Nor is there any evidence in the record that
appellant gave any consideration to his initial statement being used against him. To the contrary,
the State contends, and the record supports, that appellant sought to take full responsibility for the
offense because his prior experience with the juvenile justice system had taught him that nothing
would happen to him. When neither the initial nor the subsequent admission is the product of
coercion, I find little justification for permitting the highly probative evidence of appellant's
confession to be lost to the fact finder. Based on the intervening days, the juvenile's experience
with the system, his maturity, his initiation of contact with the police officer, and the absence of
custody or any coercion, I would find that the statements were voluntary. For these reasons, I
dissent.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Filed: October 19, 2000

Publish


1. "Nothing in this article precludes the admission of a statement . . . that does not stem
from custodial interrogation or of a voluntary statement, whether or not the result of custodial
interrogation, that has a bearing upon the credibility of the accused as a witness . . . ." Tex. Code
Crim. Proc. Ann. art. 3822, § 5 (West 1979). The language of Family Code section 51.09(b)(2)
was added in 1975 to make the oral statements of juveniles admissible on the same terms as the
oral statements of adults. See Griffin v. State, 765 S.W.2d 422, 426 (Tex. Crim. App. 1989);
Dixon v. State, 639 S.W.2d 9, 11 (Tex. App.--Dallas 1982, no pet.); Melendez v. State, 873
S.W.2d 723, 725 (Tex. App.--San Antonio 1994, no pet.).
2. In Griffin, the court of criminal appeals severely restricted application of the theory in
Texas. 765 S.W.2d at 427. Acknowledging its "superficial plausibility," the court rejected the
test in Fuller v. State, 829 S.W.2d 191, 204 (Tex. Crim. App. 1992). Even the Supreme Court,
which originated the principle in United States v. Bayer, 331 U.S. 532 (1947), did not apply it in
that case, and more recently confirmed it to have no application in the absence of coercion of the
first statement. Oregon v. Elstad, 470 U.S. 298, 312 (1985). I question as well whether it has
any application to the facts in this case. In each of the cases cited by appellant, the defendant
made oral unwarned admissions that were then followed by the giving of a written statement. In
the present case, appellant first gave a written warned statement which was followed days later by
oral admissions not in response to questioning. As a factual matter, appellant's posture is ill-suited
to the argument that his subsequent oral statements made when he initiated contact with Officer
Elder were somehow precipitated by the giving of his earlier statement made in the presence of
his father and the police officer. In any event, there is considerable difference be