28 S.W.3d 250 (2000)
In the Matter of R.J.H.
No. 03-98-00654-CV.
Court of Appeals of Texas, Austin.
October 19, 2000.
Rehearing Overruled October 26, 2000.
*251 Thomas W. Robertson, Austin, for appellant.
Lisa Dotin Stewart, Asst. Dist. Atty., Austin, for State.
Before Justices JONES, KIDD and PATTERSON.
J. WOODFIN JONES, Justice.
Our opinion and judgment issued herein on August 26, 1999 are withdrawn, and the following is substituted in lieu thereof.
Following appellant's plea of true to the State's petition alleging that he committed the offense of burglary of a habitation,[1] the 98th District Court, sitting as the Juvenile Court of Travis County, adjudicated appellant to have engaged in delinquent conduct[2] by committing the pleaded-to offense. Appellant was placed on "intensive supervision probation" for one year. Pursuant to an agreement with the State, appellant appeals the denial of his pre-trial motion to suppress. We will reverse the delinquency adjudication and remand the cause to the trial court.

FACTUAL AND PROCEDURAL BACKGROUND
Appellant, a minor, was a passenger in a car driven by his adult cousin, Pedro Ybarra, when Department of Public Safety Officer Michael Scheffler initiated a traffic stop. Scheffler discovered Ybarra was driving without a driver's license and placed him under arrest. Pursuant to a search of the vehicle incident to the arrest, Scheffler discovered what he believed to be stolen property. Scheffler contacted the Austin Police Department from the scene and confirmed that the property in the vehicle matched the description of property stolen from a residence the previous day.
Appellant was handcuffed and transported to the DPS Capitol District Office, where he was taken to Corporal Elder's office. Elder held appellant while he contacted the juvenile's father; upon the father's arrival, Elder read appellant his Miranda[3] warnings and began questioning him. Eventually, appellant signed a written statement confessing to his involvement in the burglary as follows: Ybarra and appellant went searching for an unoccupied house with the intention of committing burglary. While Ybarra waited in the car, appellant broke the lock on a window of the chosen home. He then opened the door and motioned for Ybarra to join him. The two gathered various electronic items, CD's, and a set of golf clubs, and loaded the property into the car.
After giving his written confession, appellant was released to the custody of his father. In the days following his release, appellant spoke to Elder on several occasions,[4] each time indicating he wished to revise his written statement to exonerate Ybarra by accepting sole responsibility for the burglary. Appellant also told Elder he would lead Elder to the stolen property not yet recovered, although this promise was never carried out.
The State eventually filed a petition alleging that appellant had engaged in delinquent conduct by committing burglary of a habitation. Appellant filed a pre-trial motion to suppress any statements made by him related to the burglary, written or oral. The trial court agreed the written confession should be excluded from evidence, finding that it was taken in violation of the provisions of the Family Code outlining the requirements for obtaining a *252 written statement from a juvenile.[5] However, the trial court found that appellant was not in custody when he made the subsequent oral statements relating his wish to revise his written statement; the court therefore refused to suppress these statements.
Appellant thereafter pleaded true to the allegation that he had committed burglary of a habitation pursuant to an agreement allowing him to appeal the partial denial of his motion to suppress.[6] The trial court rendered an adjudication of delinquency for committing the charged offense and placed appellant on intensive-supervision probation. In a single point of error, appellant challenges the partial denial of his motion to suppress.

DISCUSSION
Standard of Review
Generally, an appellate court reviews a trial court's ruling on a motion to suppress for abuse of discretion. See Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim. App.1997). However, when presented with a pure question of law based on undisputed facts, a de novo review is proper. See Oles v. State, 965 S.W.2d 641, 643 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (citing Guzman, 955 S.W.2d at 89). The parties in this case do not dispute the historical facts as found by the trial court. Appellant disputes only the trial court's application of the law to those facts. Since this appeal presents a question of law based on undisputed facts, we will conduct a de novo review. See Loesch v. State, 958 S.W.2d 830, 831-32 (Tex.Crim.App.1997).
Suppression of Statements
In his sole point of error, appellant asserts that the trial court erroneously refused to suppress his statements made to Elder in the days following his initial release. Appellant argues these subsequent statements were "tainted" by the prior illegally obtained written statement, and thus were involuntary within the meaning of the Due Process Clause of the United States Constitution.[7]See U.S. Const. amend. V.
The argument that a prior inadmissible statement can taint a subsequent statement has been referred to as the "cat out of the bag" theory. See Griffin v. State, 765 S.W.2d 422 (Tex.Crim.App.1989). It is based on the notion that once a defendant has confessed, but is not aware the confession cannot be used against him, he may feel he has nothing to lose by making additional incriminating statements; so burdened by the psychological pressure of the first confession, his resolve to remain silent may be broken, rendering any subsequent statements involuntary under the federal due process clause.
In Griffin, the court of criminal appeals severely limited the application of the "cat out of the bag" theory. See Rodriguez v. State, 968 S.W.2d 554, 557 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Nonetheless, the court refused to eliminate the theory altogether; instead, the court applied a "totality of the circumstances" test to determine what effect giving a statutorily inadmissible statement had on the voluntariness of a subsequent statement. See Griffin, 765 S.W.2d at 427, 430-31; see also Rodriguez, 968 S.W.2d at 558; In re J.T.H., 779 S.W.2d 954, 958 (Tex.App.-Austin 1989, no writ).
Griffin involved a juvenile who was arrested and given her Miranda warnings *253 before orally implicating herself in a murder. She was then taken to a magistrate to receive the required juvenile warnings, and subsequently signed a written statement. Griffin argued that the voluntariness of her written statement was compromised by the initial inadmissible oral confession. The court of criminal appeals held that, because of the lack of "more definite evidence" that the prior statement "played an actual role in [Griffin's] volitional processes," the trial court could not be faulted "for its finding that the State had sustained its burden to prove her subsequent written confession was voluntary under the Due Process Clause." Griffin, 765 S.W.2d at 431.[8] In so holding, the court noted that the "mere possibility" of a "psychological disadvantage" is not enough to rebut an otherwise adequate showing of voluntariness. Id. at 430. Nevertheless, the court went on to state:
Certainly ... had appellant actually testified she would not have given the written confession but for the earlier oral one, a fact issue would have been raised. In that event, it would behoove the State to produce some evidence the oral statement was admissible, and the trial court would then have been required to factor this evidence into its determination of due process voluntariness, under the totality of the circumstances test. To this extent, the "cat-out-of-the-bag" still lives. Assuming the trial court found the first statement inadmissible, two other factors would then militate in appellant's favor in this analysis. First, appellant's youth could certainly make her "but/for" claim appear more plausible than it would be coming from an adult. Secondly, not only was appellant not told her prior oral statement could not be used against her before she signed her written confession; in fact, she was positively told, as part of the Miranda warning, that her prior statement would be so used.
Id. (citations omitted).
We turn to the application of the Griffin rationale to the instant case. The uncontroverted evidence shows that, on several occasions following his initial release, appellant made statements to Officer Elder in which he sought to place all the blame for the burglary on himself. Accordingly to Elder's testimony, all of these statements were made in the context of a request that Elder allow appellant to revise his earlier written confession.
Q: (by prosecutor): ... Did [RJH] contact you about changing the statement?
A: (by Officer Elder): Yes, he did.
Q: Okay. Did you contact him first or did he contact you first?
A: He contacted me first.
Q: Approximately when was the first time after this that he contacted you?
A: Approximately four days to a week later.
* * *
Q: What did [RJH] say to you regarding this?
A: He telephoned my office and asked me if he could change his statement.
Q: Did you indicate to himwell, let me back up. Did he indicate to you why or how he wanted to change his statement?
A: He indicated to me that his cousin wasn't involved at all in the burglary of the residence.
* * *
Q: Sir, I gather from what you're saying is he called you more than once?
A: Yes. We talked quite often.
*254 Q: And he would call you to ask about changing the statement?
A: Yes.
Q: Was it always that he wanted to change the statement to say that it was only him?
A: It was alwaysevery conversation relating to the statement was may I change the statement and my cousin wasn't involved at all in the burglary of the residence.
The connection between the prior inadmissible statement and the subsequent statements is thus undeniable; appellant's requests to change the earlier written statement obviously would not have been made but for the existence of the earlier statement. It is simply not reasonable to conclude otherwise. This direct causal connection shows that the prior statement played an actual role in appellant's volitional processes. See Griffin, 765 S.W.2d at 431. Reviewing the totality of the circumstances surrounding the statements at issue, we think it clear that appellant would not have made the subsequent statements but for the existence of the earlier, inadmissible statement. The fact that the subsequent oral statements did not result from "official, coercive conduct" committed by law enforcement is irrelevant. The Family code expressly provides that "[a]n extrajudicial statement which was obtained without fulfilling the requirements of this title ... may not be used in an adjudication hearing." Tex. Fam.Code Ann. § 54.03(e) (West Supp.2000). Actual coercive conduct, in the traditional sense, is not required. See In re C.R., 995 S.W.2d 778, 784-85 (Tex.App.-Austin 1999, pet. denied).
Other factors also mitigate in favor of appellant. First, he is a minor, making his "but-for" argument more plausible. See id. Second, as part of the Miranda warnings given to appellant prior to his signing the written confession, appellant was affirmatively told that his written confession would be used against him. See id.
We believe that the record shows that, under the totality of the circumstances, appellant's subsequent statements were involuntary under the federal Due Process Clause. In addition, our review of the record reveals no evidence offered by the State to sustain its burden to prove that the subsequent statements were not the product of a psychological disadvantage, and thus voluntary.
We recognize that there is no presumption that giving an inadmissible statement prior to an admissible statement renders the second statement involuntary for purposes of federal due process. See Rodriguez, 968 S.W.2d at 558; In re J.T.H., 779 S.W.2d at 958-59. We apply no such presumption. Instead, we conduct a thorough review of the record and apply the analysis found in Griffin to the evidence contained therein. Given (1) the undeniable connection between the earlier inadmissible statement and the later statements, indicating that appellant would not have made the latter but for the former; (2) appellant's juvenile status; (3) appellant's belief that the written statement would be used against him; and (4) the paucity of evidence by the State to meet its burden to prove voluntariness, we conclude that, under the totality of the circumstances, appellant's statements to Elder requesting a revision of his written statement were not voluntary under the federal Due Process Clause. Accordingly, the trial court erred in denying appellant's motion to suppress these statements. The point of error is sustained.
Harm Analysis
Appellant's statements that he seeks to excludedesiring to revise his earlier confession in order to take full blameare obviously inculpatory. Appellant did not plead guilty until his motion to suppress had been partially overruled. The statements have therefore been "used" in obtaining his confession, resulting in harm from the partial denial of the motion irrespective of the existence of other incriminatory *255 evidence. See Gonzales v. State, 966 S.W.2d 521, 523-24 (Tex.Crim.App. 1998); McKenna v. State, 780 S.W.2d 797, 798-800 (Tex.Crim.App.1989); Kraft v. State, 762 S.W.2d 612, 613-15 (Tex.Crim. App.1988); Anthony v. State, 954 S.W.2d 132, 136 (Tex.App.-San Antonio 1997, no pet.); Woodberry v. State, 856 S.W.2d 453, 458 (Tex.App.-Amarillo 1993, no pet.).

CONCLUSION
Having found the trial court erred in denying appellant's motion to suppress the statements indicating appellant's desire to amend his written confession, and having found such denial to have been harmful, we reverse the judgment of delinquency and remand the cause to the trial court for further proceedings.
JAN P. PATTERSON, Justice, dissenting.
The majority today creates a new standard for the admission of a noncustodial statement made by a juvenile. Because I believe the record supports the trial court's conclusion that the oral statements made by appellant several days after the crime were not the product of custodial interrogation and are voluntary and admissible, I respectfully dissent. Appellant does not assert that he was in custody at the time he made the oral statements; rather, because the initial written statement was inadmissible under the Family Code, he contends that the subsequent oral statements were tainted. The State argues that appellant was not in custody at the time he made the oral statements and that the statements were freely and voluntarily given. Because appellant's voluntary statements did not stem from custodial interrogation and were not the product of a constitutional violation, the State thus contends that non-compliance with section 51.09 of the Family Code does not render the subsequent statements inadmissible. The record clearly supports the State's position.
Section 51.095(b) of the Family Code provides that the requirements of section 51.095(a) do not preclude the admission of a statement made by a juvenile if the statement does not stem from custodial interrogation. See Tex. Fam.Code Ann. § 51.095(b)(1) (West Supp.2000). The words of the Family Code pertaining to juveniles are virtually identical to those found in section 5 of article 38.22 of the Texas Code of Criminal Procedure. See Tex.Code Crim. Proc. Ann. art. 38.22, § 5 (West 1979).[1] Custodial interrogation is questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom in any significant way. A statement is not elicited as a result of custodial interrogation if the statement is not taken while the defendant is in custody. In determining whether a juvenile is in custody, we determine "whether, based upon the objective circumstances, a reasonable child of the same age would believe her freedom of movement was significantly restricted." In re L.M., 993 S.W.2d 276, 289 (Tex. App.-Austin 1999, pet. denied). In the absence of custodial interrogation, due process is violated only by confessions that are not "the product of a rational intellect and a free will." Mincey v. Arizona, 437 U.S. 385, 398, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The Family Code does not preclude the admission of a juvenile's statement if the statement does not stem from custodial interrogation. See Tex. Fam.Code Ann. § 51.09(d)(2) (West 1996); *256 Melendez v. State, 873 S.W.2d 723, 725 (Tex.App.-San Antonio 1994, no pet.).
In Laird v. State, 933 S.W.2d 707, 710 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd), the juvenile defendant, after being arrested in Pennsylvania and read his rights, was told by the Pennsylvania officer that he was not going to be asked any questions. Laird hung his head and stated, "I know what I did. I'm sorry." Id. Several hours later, he was taken to a juvenile detention facility. See id. On appeal, Laird argued that his statement was inadmissible because he was illegally detained in an adult cell, rather than in a juvenile processing office as required by Texas law, and that he was held too long before he was taken to juvenile authorities. See id. at 712. The court held that the statement was admissible based on section 51.09(d)(2), which allows an oral statement to be admitted if it is not in response to custodial interrogation. See id. at 714.
In Melendez, the defendant called a police officer, saying that he had additional information regarding a murder. Melendez agreed to come to the police station, and an officer picked him up and drove him to police headquarters. See 873 S.W.2d at 725. At the station, the defendant admitted killing the victim. See id. The officer testified that he had not asked any questions before that statement, but he had told Melendez that there were inconsistencies in a prior statement given by Melendez. See id. The defendant was then taken before a magistrate for warnings, but he refused to give a statement. See id. The court of appeals upheld the admissibility of the statement even though the juvenile was in custody because it was not elicited by questioning. See id.
The majority is correct that even in the absence of custody, due process may be violated by admissions that are not voluntarily given. See Wolfe v. State, 917 S.W.2d 270, 282 (Tex.Crim.App. 1996). The corollary is also true, however, that a volunteered statement even in custody is admissible. So, too, an unwarned oral statement will be admissible if made by a person who voluntarily comes to the police station. See California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); Meek v. State, 790 S.W.2d 618, 621-22 (Tex.Crim.App.1990); Melendez, 873 S.W.2d at 725. In the present case, because the juvenile was not in custody at the time the oral statements were made, the proper inquiry is whether the statements were voluntarily made. See Wolfe, 917 S.W.2d at 282; In re V.M.D., 974 S.W.2d 332, 346 (Tex.App.-San Antonio 1998, pet. denied).
A statement is not voluntary if there was "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." Alvarado v. State, 912 S.W.2d 199, 211 (Tex.Crim.App. 1995). In judging whether a juvenile confession or statement is voluntary, the trial court must look to the totality of circumstances. See Darden v. State, 629 S.W.2d 46, 51 (Tex.Crim.App.1982). While the majority invokes the correct test, it misapplies it in this case.
In the present case, there is no evidence in the record of any coercive conduct committed by law enforcement in connection with either the written statement or the subsequent oral statement. To the contrary, upon his arrival at the station house, appellant was immediately uncuffed. The DPS trooper notified appellant's father of his son's detention and discouraged appellant from talking about the circumstances of his detention until his father arrived. While waiting for his father, appellant was allowed to walk around freely, go to the bathroom, and get a beverage. Because the father did not have transportation, the officers brought the father to the station and advised him of the circumstances of the son's detention. The officer advised appellant of his Miranda rights in the presence of his father, and appellant and his father signed a statement indicating they understood those rights. Appellant signed *257 a statement acknowledging his involvement in the crime and was released into the custody of his father. The officer then transported the father and son to their home. Approximately four days to a week later, appellant initiated a telephone call to the officer. The evidence is undisputed that, in the days following the detention, appellant initiated contact with Officer Elder and that appellant called more than once. Appellant told the officer that his cousin was not involved in the burglary and that appellant alone was responsible.
The majority concludes that, even though appellant was not in custody, the prior inadmissible statement "tainted" the subsequent oral statements on the "cat-out-of-the-bag" theory. The majority's reliance on the all-but-discredited "cat-out-of-the-bag" theory is misplaced.[2] The majority reasons that because a written statement appellant gave to police was not obtained in accordance with the dictates of Family Code section 51.09(b), the oral statements made by appellant several days later were nevertheless rendered involuntary because appellant "may feel he has nothing to lose by making additional incriminating statements" and "so burdened by the psychological pressure of the first confession, his resolve to remain silent may be broken." As in Griffin, where the court of criminal appeals refused to suppress the statement because of a lack of "more definite evidence" that the prior statement "played an actual role in [Griffin's] volitional processes," see Griffin, 765 S.W.2d at 431, in this case there is no evidence to support the majority's conclusion that the giving of the written statement overcame appellant's resolve not to speak further to police or that it led to the subsequent statement in any way.
The cases cited by the majority do not support its application in the instant case. In Griffin, the juvenile made oral statements at the time of her arrest which were later suppressed because she had not been taken before a magistrate and advised of her rights in compliance with section 51.09(b)(1). See id. at 424-25. Several hours later, after she had been advised of her rights, she gave a written statement. See id. at 425. Applying a "totality of the circumstances" test, rather than the "cat-out-of-the-bag" theory, the court of criminal appeals upheld the admissibility of the second statement. See id. at 430-31.
Likewise, in Rodriguez v. State, 968 S.W.2d 554, 559 (Tex.App.-Houston [14th Dist.] 1998, no pet.), the court upheld the admissibility of a written statement while suppressing the initial, unwarned oral statements. Rodriguez argued, as R.J.H. does here, that the mere existence of his oral confession given without first appearing before a magistrate tainted his subsequent written statement and rendered it inadmissible. See id. at 556. The appeals court, relying on Griffin, found that the illegality of the initial oral statement to the investigator did not taint the subsequent *258 written statement. The court stated: "The rationale of Griffin, and its federal predecessors Bayer and Elstad, is that there is no presumption mandating such an inferential leap. Rather there must be evidence in the record that Rodriguez would not have given the written confession but for the earlier one." Id. at 558. Thus, in neither of the cases cited by the majority is the "cat-out-of-the-bag" theory applied; both rely entirely on a totality-of-the-circumstances test under the Due Process clause.
The majority suggests that because the oral statements were made in the "context of a request that Elder allow appellant to revise his earlier written confession," that the "connection between the prior inadmissible statement and the subsequent statements is thus undeniable." They conclude that "[t]his direct connection shows that the prior statement played an actual role in appellant's volitional processes." Because it is obvious that all relevant statements relate back to the crime in issue, it necessarily follows that the statements are connected. It does not follow, however, that the connection is a causal one. Any "causal connection" between the two statements is "speculative and attenuated at best." Oregon v. Elstad, 470 U.S. 298, 313, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). As Justice Jackson, who originated the "cat-out-of-the-bag" theory in Bayer, recognized: "[A] later confession may always be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." United States v. Bayer, 331 U.S. 532, 540-41, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). The Bayer Court went on to hold a second confession voluntary and admissible, and, further, that the "cat-out-of-the-bag" theory was not controlling.
When the majority turns to the totality-of-circumstances test, they misapply it to the facts found by the court on this record. In Elstad, the Supreme Court addressed a similar issue. They wrote: "This Court has never held that the psychological impact of a voluntary [but unwarned] disclosure of a guilty secret qualifies as state compulsion or compromises the voluntariness of a subsequent informed waiver." 470 U.S. at 312, 105 S.Ct. 1285. The admissibility of the subsequent statement turns in these circumstances solely on whether it is knowingly and voluntarily made. See id. at 308-10, 105 S.Ct. 1285. For this inquiry, the fact finder must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. See id. at 318, 105 S.Ct. 1285.
Turning to the record in the trial court, we note that appellant made statements at four different stages: at the time of the initial stop, at the station house before his father arrived, in the presence of his father after he was advised of his rights, and several days later. The evidence showed that appellant was sixteen at the time of the offense; he was the father of a two-year-old child; he was on probation for a criminal offense; he was apprehended with his adult cousin in possession of recently stolen property in a bag on his lap; and, at the time of his apprehension, he possessed beer and marijuana and was riding in a car that was apparently stolen.[3] The officer testified that he tried to explain to appellant the seriousness of the possible charge; appellant's father indicated the father understood, but that appellant did not believe that anything would happen to him because he was a juvenile. Appellant volunteered that when he failed to attend probation meetings for his prior offense, nothing had happened to him. Based on a finding *259 that the appellant was in custody, the trial court suppressed statements made during the first three stages.[4] Appellant did not testify nor did he elicit any testimony that any type of coercive conduct was used by the police in the station house that could somehow taint the statements he made days later when he was not in custody and initiated the contact.
Here, appellant's initial written confession was found to be inadmissible because it did not comply with section 51.09 of the Family Code. It may be that two statements, the first taken under coercive circumstances, are so closely related in time and place that the first necessarily controls the character of the second. In this cause, however, appellant's first statement was not deemed inadmissible because actually coerced. "Thus, this is not a case of involuntariness of an initial confession spilling over to render a second confession involuntary as well." Griffin, 765 S.W.2d at 428.
I believe that a careful review of the record clearly demonstrates that there is no causal connection between the statements, and there certainly is no evidence that appellant's will was compromised or overborne in any respect. Nor is there any evidence in the record that appellant gave any consideration to his initial statement being used against him. To the contrary, the State contends, and the record supports, that appellant sought to take full responsibility for the offense because his prior experience with the juvenile justice system had taught him that nothing would happen to him. When neither the initial nor the subsequent admission is the product of coercion, I find little justification for permitting the highly probative evidence of appellant's confession to be lost to the fact finder. Based on the intervening days, the juvenile's experience with the system, his maturity, his initiation of contact with the police officer, and the absence of custody or any coercion, I would find that the statements were voluntary. For these reasons, I dissent.
NOTES
[1] See Tex.Penal Code Ann. § 30.02 (West 1994 & Supp.1999).
[2] See Tex.Fam.Code Ann. § 54.03 (West 1996 & Supp.1999).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] It is unclear from the record how may times Elder and appellant spoke, or who initiated each contact.
[5] See Tex.Fam.Code Ann. § 51.095 (West Supp.1999).
[6] See Tex.R.App. P. 25.2(b)(3). Although this rule addresses criminal cases, the parties assume it also applies to juvenile matters, which are often referred to as quasi-criminal. We also assume, without deciding, that Rule 25.2(b)(3) applies to appellant's plea arrangement.
[7] While appellant does not specifically challenge the admission of the subsequent statement based on the Due Process Clause, it is obvious from his brief to this Court that this is the basis of his argument.
[8] Generally, it is the State's burden to show statements were given voluntarily under the federal due process clause. See Griffin, 765 S.W.2d at 430; In re J.T.H., 779 S.W.2d at 958.
[1] "Nothing in this article precludes the admission of a statement ... that does not stem from custodial interrogation or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness...." Tex.Code Crim. Proc. Ann. art. 3822, § 5 (West 1979). The language of Family Code section 51.09(b)(2) was added in 1975 to make the oral statements of juveniles admissible on the same terms as the oral statements of adults. See Griffin v. State, 765 S.W.2d 422, 426 (Tex.Crim.App. 1989); Dixon v. State, 639 S.W.2d 9, 11 (Tex.App.-Dallas 1982, no pet.); Melendez v. State, 873 S.W.2d 723, 725 (Tex.App.-San Antonio 1994, no pet.).
[2] In Griffin, the court of criminal appeals severely restricted application of the theory in Texas. 765 S.W.2d at 427. Acknowledging its "superficial plausibility," the court rejected the test in Fuller v. State, 829 S.W.2d 191, 204 (Tex.Crim.App.1992). Even the Supreme Court, which originated the principle in United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947), did not apply it in that case, and more recently confirmed it to have no application in the absence of coercion of the first statement. Oregon v. Elstad, 470 U.S. 298, 312, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). I question as well whether it has any application to the facts in this case. In each of the cases cited by appellant, the defendant made oral unwarned admissions that were then followed by the giving of a written statement. In the present case, appellant first gave a written warned statement which was followed days later by oral admissions not in response to questioning. As a factual matter, appellant's posture is ill-suited to the argument that his subsequent oral statements made when he initiated contact with Officer Elder were somehow precipitated by the giving of his earlier statement made in the presence of his father and the police officer. In any event, there is considerable difference between succumbing to a demand for information in the station house and volunteering that information days later while not in custody and without any inducement whatsoever.
[3] At the time of the traffic stop, Officer Michael Scheffler of the Texas Department of Public Safety testified that as he approached appellant's side of the vehicle, he smelled marijuana. After finding marijuana in the ashtray, the officer testified that appellant acknowledged it was his.
[4] The State did not appeal the suppression of statements made during the first three stages. Thus, the only statements at issue are the ones made several days later.