# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00327-CR

**The State of Texas, Appellant**

**v.**

**Joe Shack Laird, Appellee**

---

**FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
NO. 50,088, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING**

---

Joe Shack Laird was indicted for intoxication manslaughter and felony failure to stop and render aid. *See* Tex. Penal Code Ann. § 49.08 (West Supp. 2000); Tex. Transp. Code Ann. § 550.021 (West 1999). Before trial on the merits, Laird filed a motion to suppress the blood sample taken from him by a paramedic on the night of the offense. Laird urges that blood drawn by this paramedic, who was an emergency medical services technician, was inadmissible because section 724.017(c) of the Transportation Code specifically excludes emergency medical services personnel from the list of people qualified to draw blood in these circumstances. *See* Tex. Transp. Code Ann. § 724.017(c) (West 1999). The trial court agreed and granted Laird's motion to suppress. On this appeal, the State asks us to infer that the legislature intended to exclude emergency medical services personnel from drawing blood only when they are responding to an emergency situation. We are sympathetic to the State's position and believe its version of

the law may be more reasonable, but we feel constrained by the plain language of the statute to affirm the trial court's order.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the night of May 29, 1999, Temple police officer Sean Childress was dispatched to an accident where Laird's truck had collided with a parked car on a residential street. At the scene, Childress found Laird in the driveway of a nearby residence, surrounded by concerned homeowners and guests. Childress spoke with Laird about the accident and determined that Laird had been driving the truck. Laird smelled strongly of alcohol and appeared to be intoxicated.

After making sure that Laird was uninjured, Childress inspected the vehicles involved in the collision. He found what appeared to be blood and hair on the front right side of the truck, but he could not determine its source. Childress then arrested Laird for public intoxication and took him to the city jail.

In the meantime, Temple police detective Keith Reed responded to another traffic accident where a pedestrian had been killed. The victim appeared to have been struck by a vehicle, but the vehicle had left the scene. A front license plate, however, was lying next to the victim's body. Reed then discovered that a truck with a matching rear license plate had been involved in a different accident nearby. The truck was the one that Laird had been driving. Reed immediately instructed Childress to have blood drawn from Laird because it appeared that his truck was involved in an accident which had resulted in a death. *See* Tex. Transp. Code Ann. § 724.012(b) (West 1999). Neither Reed nor Childress sought a warrant for the blood extraction.

2

Acting on Reed's instructions, Childress took Laird from the jail to the emergency room of Scott and White Hospital to have his blood drawn. At the hospital, when Laird refused to consent to the blood sample, the emergency room physicians would not draw his blood.[1] Childress then telephoned his supervisor, Sergeant William Llewellyn, who in turn asked Reed what to do next.

Reed instructed the officers to take Laird to a nearby fire station to have a licensed paramedic take the required blood specimen. Childress drove Laird to the central fire station, and Llewellyn met them there within minutes. The paramedic on duty that night was Jeff Waggy. The two officers and Waggy tried to get Laird to voluntarily submit to giving a blood sample, but Laird steadfastly refused. Llewellyn then swept Laird's feet out from under him, and both officers pinned Laird down on the floor of the fire station and held out his arm so that Waggy could take a blood sample. The officers testified that Laird did not struggle during this procedure. Childress then drove Laird back to jail, and Laird was subsequently indicted for intoxication manslaughter and felony failure to stop and render aid. *See* Tex. Penal Code Ann. § 49.08; Tex. Transp. Code Ann. § 550.021.

About six weeks before Laird was scheduled to be tried for the charged offenses, he filed a motion to suppress the blood sample taken from him, urging that the specimen was obtained in violation of section 724.017 of the Transportation Code and was therefore inadmissible. *See* Tex. Transp. Code Ann. § 724.017; Tex. Code Crim. Proc. Ann. art. 38.23(a)

---

[1] The hospital's risk manager advised the emergency room personnel not to take Laird's blood without his consent.

3

(West Supp. 2000) (stating that evidence obtained unlawfully shall not be admitted). The trial court granted Laird's motion to suppress, agreeing that the blood sample was taken by a person unauthorized to do so under section 724.017. The State now challenges this ruling. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2000).

## DISCUSSION

In its sole point of error, the State contends that the trial court should have denied Laird's motion to suppress. The State offers various legal theories in support of its position, all of which relate to the application and interpretation of section 724.017 of the Transportation Code. We consider each of the State's contentions in turn.

In general, an appellate court reviews a trial court's ruling on a motion to suppress for abuse of discretion. *In re R.J.H.*, 28 S.W.3d 250, 252 (Tex. App.—Austin 2000, no pet.). When presented with a pure question of law based on undisputed historical facts, however, *de novo* review is proper. *Id.* The parties in this case do not dispute the facts that formed the basis of the trial court's decision; rather, the State questions only the trial court's application of the law to those facts. We therefore review the trial court's decision *de novo*. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (holding that mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor may be reviewed *de novo*); *In re R.J.H.*, 28 S.W.3d at 252.

4

The statute in question is part of a broader statutory scheme which governs the taking of blood and breath specimens from persons who have been arrested for certain intoxication-related offenses. Section 724.017 provides in pertinent part that

> (a) Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter. The blood specimen must be taken in a sanitary place.
>
> . . . .
>
> (c) In this section, "qualified technician" does not include emergency medical services personnel.

Tex. Transp. Code Ann. § 724.017(a), (c) (West 1999).

The State's first contention is that the provisions of chapter 724 (specifically section 724.017) do not apply to Laird because he was arrested for public intoxication and not "for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place . . . while intoxicated . . . ." *Id*. § 724.011(a) (West 1999). We considered this very question in *Elliott v. State*, 908 S.W.2d 590, 593 (Tex. App.—Austin 1995, pet. ref'd), and explicitly rejected the State's argument.[2] Just as in *Elliott*, Laird was arrested for public intoxication after he drove his truck into another vehicle. *See id.* at 591. The offense for

---

[2] Although we realize that section 724.011 has been amended and codified since we decided *Elliott*, the difference in the relevant phrase is only one of semantics. *See* Act of April 21, 1993, 73d Leg., R.S., ch. 82, § 1, 1993 Tex. Gen. Laws 168, 168-69 (Tex. Rev. Civ. Stat. Ann. art. 6701*l*-5, § 1 since amended and codified at Tex. Transp. Code Ann. § 724.011(a) (West 1999)).

which Laird was arrested arose in part out of acts allegedly committed while driving under the influence, and as we found in *Elliott*, chapter 724 therefore applies to his case. *See id.* at 593.

The State next contends that even if chapter 724 does apply in this case, section 724.017 was not violated because the paramedic who drew Laird's blood was not acting as "emergency medical services personnel" at the time he took the blood sample from Laird. The State urges that section 724.017(c) is meant only to exclude medical personnel responding to an actual emergency and that any other reading of this statute leads to absurd results. "Surely," the State argues,

> a paramedic employed by a hospital in the task of drawing blood at the hospital in the course of everyday treatment of patients . . . is a "qualified technician" and not excluded from the class of persons authorized to draw blood simply because he also happens to be a paramedic. That is the case here, instead of being on duty at a hospital the paramedic was on duty at a fire station.

As a matter of statutory construction, however, we cannot agree.

The starting point for statutory analysis is the text of the relevant provision. *Ex parte Kuester*, 21 S.W.3d 264, 266 (Tex. Crim. App. 2000). We look first to the plain meaning of the words to determine the purpose and effect of a statute. *Id.* Every word of a statute is presumed to have been used for a purpose, and every word excluded must also be presumed to have been excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). We may look beyond the text only if the language is ambiguous or would lead to an absurd result that the legislature could not possibly have intended. *Ex parte Kuester*, 21 S.W.3d at 266 (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). Specific,

6

unambiguous statutes are the current law and should not be construed by a court to mean something other than the plain words say. *Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999).

The text of section 724.017 lists several professions whose members are authorized to draw blood under the statute. Tex. Transp. Code Ann. § 724.017(a); *see Cavazos v. State*, 969 S.W.2d 454, 456 (Tex. App.–Corpus Christi 1998, pet. ref'd). Paramedics are not included on this list. *Cf*. Tex. Transp. Code Ann. § 724.017(a). The statute also includes a general category for other "qualified technicians." *Id*. The statute expressly excludes "emergency medical services personnel" from the catch-all category. *Id*. § 724.017(c). "Emergency medical services personnel" is not defined in the statute.

If a technical term is not defined in a statute, courts often interpret the statute in light of testimony of witnesses familiar with the particular art, science, or trade. *State v. Bingham*, 921 S.W.2d 494, 496 (Tex. App.–Waco 1996, pet. ref'd). At the suppression hearing, Waggy explained to the trial court that a paramedic is a high-level emergency medical technician. Nothing in the plain text of the statute suggests that the term emergency medical services personnel was *not* meant to include paramedics. Construing the statute literally, then, Waggy's testimony leads us to conclude that he is an emergency medical technician and that under the statute he was not authorized to take Laird's blood at the request of the police. This is exactly what the trial court determined.

The State urges us, however, to consider the fact that Laird's blood was not drawn during an actual emergency. Nothing in the statute itself suggests that the existence of an

7

emergency is what disqualifies emergency medical services personnel from taking blood specimens. If the legislature was concerned about emergency situations, it could easily have disqualified blood samples taken by an emergency medical technician or any of the other authorized personnel during an emergency.

Although we recognize that this statute could lead to some unexpected outcomes in certain cases such as this one, it is our job as the judiciary to faithfully follow the specific text that was adopted by the legislature. *See Boykin*, 818 S.W.2d at 785. As written, the statute sets forth a bright-line rule that is easy for peace officers to follow; they may request that blood specimens be taken by any qualified person other than emergency medical services personnel. If we were to read section 724.017 as excluding only those specimens obtained during an emergency, peace officers would be burdened with discerning whether a particular situation constituted an emergency for the purpose of the statute. If this is in fact what the legislature intended, they could have said so more plainly. Because bright-line rules are useful to law enforcement officers, we cannot say that the statute as written leads to results that the legislature could not possibly have intended. *See id.*

The State next argues that evidence obtained in violation of chapter 724 should not be excluded if the State can show that the specimen was taken in accordance with some other lawful procedure such as by a search warrant, with the defendant's actual consent, or under exigent circumstances where probable cause exists to arrest the defendant.[3] Because the trial court

---

[3] The State's argument that section 724.017 need not be complied with if a blood sample is obtained with a search warrant or with the accused's actual consent is not relevant to the instant

made explicit findings that probable cause and exigent circumstances existed at the time Laird's blood was drawn, the State asks us to overlook the violation of section 724.017.[4]

The taking of a blood sample is a search and seizure under both the federal and Texas constitutions. *Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982). However, when officers have probable cause, exigent circumstances, and a reasonable method of extraction, taking a blood sample without a warrant or consent is not an unreasonable search and seizure and does not violate either the Fourth Amendment or article I, section 9 of the Texas Constitution. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Schmerber v. California*, 384 U.S. 757, 767-68 (1966); *Aliff*, 627 S.W.2d at 169-70. It is a well-settled fact that alcohol in the blood dissipates quickly constitutes exigent circumstances. *See Schmerber*, 384 U.S. at 770-71; *Aliff*, 627 S.W.2d at 170; *Weaver v. State*, 721 S.W.2d 495, 497 (Tex. App.–Houston [1st Dist.] 1986, pet. ref'd). What the State fails to note, however, is that while this doctrine renders *constitutional* the taking of blood samples under exigent circumstances where probable cause exists, it does not necessarily comply with other laws to make the samples *lawfully* obtained evidence.

Chapter 724 of the Texas Transportation Code enlarges upon what is constitutionally required with regard to blood samples when a person is under arrest for an

_____

case. We note, however, that on the facts of both *Cavazos v. State*, 969 S.W.2d 454, 455-57 (Tex. App.–Corpus Christi 1998, pet. ref'd), and *State v. Bingham*, 921 S.W.2d 494, 495 (Tex. App.–Waco 1996, pet. ref'd), actual consent did not obviate compliance with section 724.017.

[4] Laird contends that the State lacks standing to make this argument because constitutional rights belong only to individuals. The State is not seeking redress for someone else's constitutional injury, but is only offering alternative legal grounds for the admissibility of evidence. There is no standing problem with the State's position.

intoxication-related offense. *Weaver*, 721 S.W.2d at 497. The statute applies only to persons under arrest when the blood sample is taken. *Id*. Accordingly, Texas courts apply the probable cause and exigent circumstances test only in cases where a blood sample is taken from someone not under arrest. *See, e.g., Pesina v. State*, 676 S.W.2d 122, 123, 125 (Tex. Crim. App. 1984); *Weaver*, 721 S.W.2d at 497; *Burkhalter v. State*, 642 S.W.2d 231, 232-33 (Tex. App.—Houston [14th Dist.] 1982, no pet.).

On the other hand, Texas courts require full compliance with the provisions of chapter 724 when a blood sample is taken from an arrested suspect even though exigent circumstances exist. *See, e.g., Cavazos*, 969 S.W.2d at 457 (holding that it was error to admit blood sample taken by phlebotomist without evidence showing he was a qualified technician); *Bingham*, 921 S.W.2d at 496 (requiring proof of phlebotomist's qualifications to determine admissibility of blood taken from person arrested for driving while intoxicated). The removal of constitutional impediments as to the taking of a blood test "does not obviate the necessity of compliance with statutory provisions, even though statutory requirements may not now be constitutionally required." *Darland v. State*, 582 S.W.2d 452, 454 (Tex. Crim. App. 1979) (quoting *Olson v. State*, 484 S.W.2d 756, 772 (Tex. Crim. App. 1969)). It is clear, therefore, that although the taking of the blood sample from Laird passes constitutional muster, that is not enough. His blood was drawn pursuant to an arrest related to intoxicated driving believed to have caused the death of another. *See* Tex. Transp. Code Ann. § 724.012(b). By the plain language of the statute, only authorized professionals may "take a blood specimen at the request or order

10

of a peace officer under this chapter." *Id.* § 724.017(a). The State cannot attempt to circumvent the controlling statute by claiming constitutional compliance.

The State next suggests that suppression of the blood sample taken from Laird does not serve the purpose of the exclusionary rule. Article 38.23 of the Texas Code of Criminal Procedure provides:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Tex. Code Crim. Proc. Ann. art. 38.23(a). Although the plain language of article 38.23(a) suggests that evidence obtained in violation of *any* law must be suppressed, the State is correct in its assertion that article 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule. *See Lane v. State*, 951 S.W.2d 242, 243 (Tex. App.– Austin 1997, no pet.); *Carroll v. State*, 911 S.W.2d 210, 221 (Tex. App.– Austin 1995, no pet.). The primary purpose of article 38.23(a) is to deter unlawful actions which violate the rights of criminal suspects. *Carroll*, 911 S.W.2d at 221. "[T]he underlying theory of both the exclusionary rule and article 38.23 is the same: to protect a suspect's liberty interests against the overzealousness of others in obtaining evidence to use against them." *Chavez v. State*, 9 S.W.3d 817, 822 (Tex. Crim. App. 2000) (Price, J., concurring). In the instant case, the State contends that the primary purpose of section 724.017 is to protect the rights of emergency medical services personnel and

not criminal defendants. The State asks us to conclude that evidence obtained in violation of section 724.017, therefore, need not be excluded under article 38.23(a).

Section 724.017 governs where and by whom a blood specimen may be taken at the request of a peace officer from a person arrested for intoxicated driving. Tex. Transp. Code Ann. § 724.017(a). As we discussed earlier, nothing in the plain language of that section demonstrates that the legislature intended to protect emergency workers; in fact, the statutory language suggests that physicians, chemists, registered professional nurses, licensed vocational nurses, and qualified technicians who are not emergency medical services personnel are authorized to draw blood at any time. *See id*. § 724.017(a), (c).

The more obvious purpose of section 724.017 in requiring sanitary conditions and qualified technicians is to ensure that a suspect's health not be compromised just because he is accused of committing a crime. Blood samples taken by unauthorized persons are inadmissible. *Cavazos*, 969 S.W.2d at 457. Further, the statute requires that the sample be taken in a sanitary place. Tex. Transp. Code Ann. § 724.017(a). The rights of criminal suspects are clearly implicated by section 724.017. The statute is directly related to the gathering of evidence for use in a criminal prosecution against the suspect, and suppression of a blood specimen serves the exclusionary purpose of article 38.23. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a). We hold, therefore, that Laird's blood sample is inadmissible under article 38.23(a) because it was drawn in violation of section 724.017 of the Transportation Code.

The State's final argument is that Laird should be estopped from asserting any complaint about noncompliance with section 724.017 because it was *his* refusal to consent which

caused the police to leave the hospital and resort to a fire station in order to obtain the blood sample. The State argues that he, in effect, invites the alleged error he now complains about.

We note initially that Laird's refusal to consent to the taking of his blood did not proximately cause the officers to take him to a fire station. Scott and White Hospital made its own determination of the risk involved in taking Laird's blood without his consent. The hospital may have refused to take the sample for any number of reasons. After Scott and White decided not to take the specimen, Detective Reed made his own independent, professional decision to have Laird taken to a fire station. This scenario is very different from the situation in *State v. Yount*– the only case cited by the State in support of its estoppel argument. *State v. Yount*, 853 S.W.2d 6, 11 (Tex. Crim. App. 1993) (Baird, J., concurring) (finding that jury instruction on lesser included offense was requested by defendant, so he could not later complain that lesser included offense was time-barred).

Perhaps more instructive in Laird's situation, however, is the fact that section 724.017 applies to all blood specimens taken at police request under chapter 724, regardless of whether the suspect has expressly or impliedly consented. *See* Tex. Transp. Code Ann. § 724.013, .017(a) (West 1999). If we were to hold that a suspect could not complain of noncompliance with section 724.017 unless he or she voluntarily consented, the statute would be eviscerated with respect to mandatory blood draws. Such a holding would also expose some suspects to possibly egregious violations of the statute whenever doctors or hospitals determine that drawing blood without the suspect's consent presents too high a risk. These results would be

13

contrary to the plain language of section 724.017 and detrimental to our finding that section 724.017 is concerned with the rights of the accused.

## CONCLUSION

We hold that the trial court did not err by determining that the blood sample taken from Laird was obtained in violation of section 724.017 of the Transportation Code. We overrule the State's sole point of error and affirm the order of the trial court.

_____

Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Patterson

Affirmed

Filed:   December 14, 2000

Publish

14