ACCEPTED
03-14-00588-CR
3629106
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/31/2014 1:29:51 PM
JEFFREY D. KYLE
CLERK

# No. 03-14-00588-CR

In the
Court of Appeals
Third District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

12/31/2014 1:29:51 PM

JEFFREY D. KYLE
Clerk

---

**The State of Texas,**
Appellant

v.

**Hector Martinez,**
Appellee

---

Appeal from the 42th Judicial District Court
Travis County, Texas
Cause Number D-1-DC-13-900228

---

## STATE'S BRIEF

---

**Rosemary Lehmberg**
District Attorney
Travis County

**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4206
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

*Oral argument is requested*

## Identity of Parties and Counsel

| | |
|---|---|
| Trial Judge: | **Jim Coronado**<br>427th Judicial District Court<br>P.O. Box 1748<br>Austin, Texas 78767 |
| | **Leon Grizzard**<br>Magistrate Judge<br>P.O. Box 1748<br>Austin, Texas 78767 |
| Trial Counsel for State: | **Kelly Gier and Willis Chambers**<br>Travis County District Attorney's Office<br>P.O. Box 1748<br>Austin, Texas 78767 |
| Appellate Counsel for State: | **Angie Creasy**<br>Travis County District Attorney's Office<br>P.O. Box 1748<br>Austin, Texas 78767 |
| Defendant/Appellee: | **Hector Martinez** |
| Counsel for Defendant/Appellee: | **John de la Vina**<br>1108 Lavaca Street, Suite 110<br>Austin, Texas 78701 |

i

# Table of Contents

Identity of Parties and Counsel ............................................................ i

Index of Authorities......................................................................... iii

Statement of the Case ........................................................................v

Statement of Facts ...........................................................................1

Summary of the State's Argument...................................................... 7

Standard of Review........................................................................... 8

Argument......................................................................................... 8

   Point One: The blood draw evidence is admissible under the exigent circumstances exception to the warrant requirement. ..................... 9

   Point Two: Alternatively, the evidence is admissible because the blood draw was mandated by statute, and the statute is constitutionally reasonable under the Fourth Amendment. ...........14

   Point Three: Alternatively, the blood draw evidence is admissible because the defendant is deemed to have consented to the taking of a specimen, per Tex. Transp. Code § 724.011(a)............................ 20

   Point Four: Assuming, arguendo, that the blood draw is unconstitutional, the Texas exclusionary rule still does not bar admission of the evidence.............................................................21

   Point Five: The federal exclusionary rule does not bar admission of the evidence either..................................................................... 25

Prayer ........................................................................................... 28

Certificate of Compliance and Service............................................. 29

ii

# Index of Authorities

## Cases

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982) ...............22, 27

*Breithaupt v. Abram*, 352 U.S. 432, 77 S. Ct. 408, 1 L. Ed. 2d 448 (1957)...........................................................................................18

*Davis v. United States*, 564 U.S. ___, 131 S. Ct. 2419, 180 L. Ed. 285 (2011)........................................................................... 27

*Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987) .................................................................................................. 25

*Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002).....................19

*Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1958, 186 L. Ed. 2d 1 (2013) ..................................................................................................15

*McCambridge v. State*, 778 S.W.2d 70 (Tex. Crim. App. 1989)........ 20

*Missouri v. McNeely, 569 U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013)* ........................................................................13, 24, 27

*Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App. 1993)....................15

*Neesley v. State*, 239 S.W.3d 780 (Tex. Crim. App. 2007)........... 16, 17

*People v. Youn*, 2014 Cal. App. LEXIS 799 (Cal. App. 2d Dist. Aug. 15, 2014)...................................................................................... 27

*Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d. 250 (2006).........................................................................................15

*Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008).................15

*Shepherd v. State*, 273 S.W.3d 681 (Tex. Crim. App. 2008) .............. 8

*South Dakota v. Neville*, 459 U.S. 553, 103 s. Ct. 916, 74 L. Ed. 2d 748 (1983) ........................................................................................18

*State v. Adkins*, 433 N.J. Super. 479, 81 A.3d 680 (App. Div. Dec. 20, 2013)...................................................................................... 24

*State v. Johnson*, 871 S.W.2d. 744 (Tex. Crim. App. 1994)............... 23

*State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011) ...............17

*State v. Laird*, 38 S.W.3d 707 (Tex. App.—Austin 2000, pet. ref'd). 27

*State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2000, pet. ref'd) ............................................................................................... 22

*State v. Mosely,* 348 S.W.3d 435 (Tex. App.—Austin 2011, pet. ref'd) ..................................................................................................18

*State v. Villarreal*, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014)..............................9, 15, 19, 21

*te v. Mosely,* 348 S.W.3d 435 (Tex. App.—Austin 2011, pet. ref'd) ....17

*United States v. Brooks*, No. PWG-14-0053, 2014 U.S. Dist. LEXIS 67417 (D. Md. May 16, 2014) (mem. op.) ........................................ 27
*United States v. De Angelo*, 584 F.2d 46 (4th Cir. 1978) ................... 21
*United States v. Herzbrun*, 723 F.2d 773 (11th Cir. 1984) ............... 20
*United States v. Spriggs*, 827 F. Supp. 372 (E.D. Va. 1993) ..............21
*Wehrenberg v. State*, 416 S.W.3d 458 (Tex. Crim. App. 2013)......... 23
*Winston v. Lee*, 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985) ....................................................................................................18

**Statutes**

Tex. Code Crim. Proc. art. 38.23 ......................................................21
Tex. Penal Code § 49.04 ....................................................................v
Tex. Penal Code § 49.09 ....................................................................v
Tex. Transp. Code § 724.011 ............................................................ 20
Tex. Transp. Code § 724.012....................................................14, 26
Tex. Transp. Code § 724.017............................................................18

## Statement of the Case

A grand jury indicted the defendant for driving while intoxicated with two prior convictions. CR 3-4; Tex. Penal Code § 49.04, 49.09(b)(2). The trial court granted the defendant's motion to suppress the blood test results, and the State gave notice of appeal. CR 61-70.

In the
Court of Appeals
Third District
Austin, Texas

**The State of Texas,**
Appellant

v.

**Hector Martinez,**
Appellee

Appeal from the 42th Judicial District Court
Travis County, Texas
Cause Number D-1-DC-13-900228

**STATE'S BRIEF**

To the Honorable Third Court of Appeals:

Now comes the State of Texas and files this brief, and in support

thereof respectfully shows the following:

**Statement of Facts**

Around 12:25 a.m. on March 15, 2013, a 911 caller reported that an

unknown man was banging on her front door. 2RR 9, 12, 29. Officer

Johnson arrived at the caller's home about 10 minutes later, and he

saw the defendant backing his truck out of the driveway. 2RR 13-14,

1

21, 48, 74; 3RR 8. Officer Johnson detained the defendant in handcuffs. 2RR 15. The defendant explained that he had made a mistake, that he thought his friend lived at the caller's house. 2RR 17, 19-20, 74.

Officer Johnson testified that the defendant had glassy bloodshot eyes, he swayed, he had a strong odor of an alcoholic beverage on his breath, he thought it was 3 a.m., he admitted drinking two or three beers at a concert event for South by Southwest, and he said "I'm fucked up, I'm not going to lie." 2RR 17-18, 21-23. Officer Johnson began a DWI investigation around 12:41 a.m. 2RR 21. For the standardized field sobriety tests, the defendant exhibited all six possible clues on the horizontal gaze nystagmus test, four clues on the walk and turn test, and two clues on the one leg stand test. 2RR 25-28.

Officer Johnson arrested the defendant for driving while intoxicated around 1 a.m. 2RR 29, 38. Officer Johnson read the DIC-24 statutory warnings to the defendant, and the defendant refused to provide a sample of his breath or blood. 2RR 61, 75, 79. After making arrangements for the defendant's vehicle, Officer Johnson

transported the defendant to the "BAT bus," in order to turn him over to the "DWI unit" for transport to the jail. 2RR 60-61; 3RR 8.

They arrived at the BAT bus at 1:45 a.m. 2RR 63-64, 67. Once there, Officer Johnson learned that the defendant had prior convictions for driving while intoxicated, which meant the officer had to get a mandatory blood draw pursuant to state law. 2RR 37, 64. Officer Johnson then transported the defendant to the jail, where there was a phlebotomist who could take the mandatory blood draw. 2RR 64.

They arrived at the jail around 2:15 a.m. 2RR 67, 71. Once at the jail, Officer Johnson saw that the defendant's eyes were open but he was nonresponsive. 2RR 65. Then the defendant was "trying to hyperventilate." 2RR 30.

Officer Johnson called EMS, who arrived 5 to 10 minutes later. The defendant fought EMS, flailing and kicking his legs. EMS tried to strap him down but he was still kicking. Officer Johnson had to hold his legs down. On the way to the hospital, EMS had to stop on the street to sedate the defendant because he was still fighting and kicking. Officer Johnson testified that the defendant fought for about

3

30 minutes or so. 2RR 66-67. Officer Johnson testified that the entire medical intervention (calling EMS, fighting with and subduing the defendant, and transporting him to the hospital) added approximately an hour to the investigation. 2RR 71.

Officer Johnson did not recall exactly what time they arrived at the hospital, but dispatch showed that they were en route to the hospital at 3 a.m., and the defendant's blood was drawn at the hospital at 3:34 a.m. 2RR 31, 67, 71.

Officer Johnson did not get, or attempt to get, a search warrant. 2RR 36-37. Officer Johnson testified that he had never gotten a search warrant before this arrest, but he has gotten search warrants since that time, and it usually takes 45 minutes to an hour to obtain. 2RR 38-41.[1] The process entails printing out a form and calling a corporal to review the form, and the corporal fills outs some more paperwork and takes it all to the magistrate at the jail. 2RR 64-65.

---

[1] When asked on cross examination, Officer Johnson said it takes about 20 to 30 minutes to get a warrant on a "no refusal" weekend, but he did not know whether it was a "no refusal" weekend on the night that the defendant was arrested, and no evidence was admitted to show that it was. 2RR 68, 76-77.

The process, however, was put in place after the arrest in this case.[2] 2RR 36-41.

The defendant filed a motion to suppress the blood draw evidence, arguing that the blood draw violated the Fourth Amendment because there was no warrant and no warrant exception. Supp CR 4-6.[3] He argued at the hearing that the police officer should have gotten a warrant, that he had ample time to do so, and that the implied consent statute runs afoul of the Fourth Amendment. 3RR 7-8.

The State countered that the blood draw was justified under the exigent circumstances exception to the warrant requirement. CR 45; 3RR 7.

Additionally, the State argued that the evidence is admissible because the blood draw was mandated by Tex. Transp. Code § 724.011(b), and the statute is constitutionally reasonable under the Fourth Amendment. CR 40-44.

---

[2] The officer testified that the search warrant policy changed because of "case law." He was likely referring to the Supreme Court's decision in *Missouri v. McNeely*, 569 U.S. __, 133 S. Ct. 1552, 1561, 185 L. Ed. 2d 696 (2013).

[3] The motion to suppress was filed under the original cause number instead of the re-indicted cause number.

The State also argued that the blood draw evidence is admissible because the defendant is deemed to have consented to the taking of a specimen, per Tex. Transp. Code § 724.011(a). CR 40-41.

Finally, the State argued that, even if the blood draw was unconstitutional, (1) The Texas exclusionary rule does not apply because the police did not violate the law as it existed at the time of the search, and (2) The federal exclusionary rule does not bar admission of the evidence either because the police were acting in good faith reliance on both statutes and appellate precedent. CR 44-45.

After a hearing on the motion to suppress, the magistrate judge recommended suppressing the blood test results because "the medical intervention did not present exigent circumstances," "the State does not have an interest in prosecuting DWIs which would override the constitutional requirement for a search warrant," and "implied consent is not a recognized exception to the warrant requirement." CR 61-63. He did not specifically address the State's last argument, namely, that the exclusionary rules do not apply.

The presiding judge signed an order adopting the rulings of the magistrate and granting the motion to suppress the blood draw. CR 64. The State is appealing this order. CR 65-70.

## Summary of the State's Argument

***Point One:*** The exigent circumstances exception to the warrant requirement applies in this case. This case does not involve a routine DWI, and the State is not arguing exigency based solely on the dissipation of alcohol in the blood. Instead, there was an actual medical emergency and a combative defendant, which ate up time and took the officer away from the jail and the magistrate. Thus, the officer acted reasonably in pursuing a blood draw without a warrant in this case.

***Point Two:*** The evidence is admissible because the blood draw was mandated by statute, and the statute is constitutionally reasonable under the Fourth Amendment.

***Point Three:*** Alternatively, the blood draw evidence is admissible because the defendant is deemed to have consented to the taking of a specimen, per Tex. Transp. Code § 724.011(a).

***Point Four:*** Even if the blood draw was unconstitutional, the Texas exclusionary rule does not apply because the police did not violate the law as it existed at the time of the search.

***Point Five:*** The federal exclusionary rule does not bar admission of the evidence either because the police were acting in good faith reliance on both statutes and appellate precedent.

## Standard of Review

The appellate court reviews a ruling on a motion to suppress evidence for an abuse of discretion. The appellate court views the facts in the light most favorable to the trial court's decision. The appellate court reviews *de novo* the trial court's application of the law of search and seizure to those facts. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).

## Argument

The State acknowledges that the Texas Court of Criminal Appeals recently held that a warrantless blood draw, conducted pursuant to the mandatory blood draw statute, violated the Fourth Amendment because it did not fall under any recognized exception to the warrant

requirement. The court held that implied consent that has been withdrawn by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires. *State v. Villarreal*, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014).

The court's decision in *Villarreal* directly contradicts the arguments made by the State in Points Two and Three. The State is making these arguments to preserve error because *Villarreal* is not yet final, but in light of *Villarreal*, the State asks this Court to focus on Points One, Four, and Five.

### Point One: The blood draw evidence is admissible under the exigent circumstances exception to the warrant requirement.

The judge held that there were no exigent circumstances, stating:

> I find that the medical intervention did not present exigent circumstances which would have made a warrantless blood draw objectively reasonable. The time from the initial call to when the blood was drawn was about three hours. *According to Officer Johnson's testimony, it would have been about the same amount of time had a warrant been sought.* The medical situation might have given rise to exigency had it been prolonged, as the passage of time does make the blood test evidence less reliable, but that did not in fact happen.

CR 61 (emphasis added).

First, the trial court's finding that, "According to Officer Johnson's testimony, it would have taken about the same amount of time had a warrant been sought" is not supported by the record. Officer Johnson testified that a search warrant usually takes 45 minutes to an hour to obtain. 2RR 38-39.

And although it was not explored in detail, getting a warrant probably would have taken quite a bit longer in the defendant's case because Officer Johnson was at the hospital instead of at the jail; there is no indication that he had access to a computer, or a printer, or the search warrant form; and it appears that the search warrant forms and expedited process did not even exist at the time of this blood draw. 2RR 38-41.

Even if Officer Johnson was able to draft an affidavit at the hospital, he still would have had to wait for a corporal to come pick it up to take it to the magistrate at the jail. Alternatively, Officer Johnson could have had another officer take custody of the defendant so he could head to the jail to secure a search warrant. But in either case, it clearly would have taken longer than the normal process of

getting a search warrant at the jail, which Officer Johnson testified usually takes 45 minutes to an hour.

Additionally, it does not appear that Officer Johnson spent any part of the night standing around and wasting time, when he could have been getting a search warrant. Instead, the record shows that Officer Johnson investigated the original disturbance call, conducted a DWI investigation, made an arrest, read the DIC-24, made arrangements for the defendant's car, transported the defendant to the BAT bus for processing by the DWI unit, received information that the defendant had prior DWI convictions, transported him to the jail, was confronted with a nonresponsive defendant, spoke to the jail medics who refused to accept the defendant, called EMS, fought to restrain the now-combative defendant, accompanied EMS to the hospital, stopped along the way because EMS had to sedate the defendant, and drew blood shortly after they arrived at the hospital.

Therefore, the trial court's finding that the blood draw would have taken the same amount of time had a warrant been sought is not supported by the record.

Additionally, the trial court's conclusion that the officer's decision to proceed without a warrant was unreasonable shows an improper analysis and judicial second-guessing. First, the court must consider the totality of the circumstances, not just the time it would take to get a warrant. *Missouri v. McNeely*, 569 U.S. __, 133 S. Ct. 1552, 1561, 185 L. Ed. 2d 696 (2013). Second, the analysis must be undertaken from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 1564 n7.

Considering the totality of the circumstances from the perspective of a reasonable officer on the scene means that the court must consider that three hours had elapsed at the point that Officer Johnson obtained a warrantless blood draw.[4] By any standard, three hours is a significant delay.

A lengthy delay means the resulting BAC is less relevant to the jury's determination of BAC at the time of the crash. As stated in *McNeely*,

---

[4] The 911 call came in around 12:25 a.m. Officer Johnson responded about 10 minutes later. The defendant's blood was drawn at 3:34 a.m. It is important to note that the length of time between the defendant's last drink and the blood draw was even longer.

> Because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results. This fact was essential to our holding in *Schmerber*, as we recognized that, under the circumstances, further delay in order to secure a warrant after the time spent investigating the scene of the accident and transporting the injured suspect to the hospital to receive treatment would have threatened the destruction of evidence.

*McNeely*, at 1561.

A lengthy delay also affects the State's ability to calculate an admissible retrograde extrapolation. Finally, a lengthy delay means it is more likely that the defendant's BAC will drop below 0.08 by the time of the blood draw. For these reasons, when there has been a lengthy delay, the need to proceed without a warrant is far greater than in a case where there has been only 30 minutes to an hour from the time of driving to the time of a blood draw.

In sum, this case does not involve a routine DWI, and the State is not arguing exigency based solely on the dissipation of alcohol in the blood. Instead, there was an actual medical emergency and a combative defendant, which ate up time and took the officer away from the jail and the magistrate. Ultimately, over three hours elapsed from the time of driving to the time of the blood draw. Under these

circumstances, the State is asking this Court to conduct a *de novo* review of the trial court's application of the law of search and seizure to the facts and find that the officer's decision to proceed with a warrantless blood draw, instead of taking an additional 45 minutes to an hour, or possibly longer, to obtain a warrant, was reasonable.

### *Point Two: Alternatively, the evidence is admissible because the blood draw was mandated by statute, and the statute is constitutionally reasonable under the Fourth Amendment.*

**The warrantless blood draw was mandated by statute.**

Tex. Transp. Code § 724.012(b)(3)(B) mandated the warrantless blood draw in this case. The statute does not specifically state that the blood draws should be undertaken without a warrant, but when a statute *mandates* that the police do something, it is incompatible to read in a requirement that they get approval from a magistrate as well. What happens when the magistrate refuses to issue a warrant? Should the police comply with the statute's mandate to draw blood or abide by the magistrate's decision? Because it would lead to absurd results, the mandatory blood draw statute cannot be interpreted to require warrants. *Muniz v. State*, 851 S.W.2d 238, 244 (Tex. Crim.

14

App. 1993) (stating that courts should prefer an interpretation of a statute that does not yield absurd results).

**The court should conduct a traditional balancing test to evaluate the constitutionality of the statute.**

Because the search in this case was mandated by statute, the State asks this Court to apply a traditional Fourth Amendment balancing test, which weighs the statute's promotion of legitimate government interests against the intrusion on individual privacy. *See Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1958, 186 L. Ed. 2d 1 (2013); *Segundo v. State*, 270 S.W.3d 79, 96-99 (Tex. Crim. App. 2008); *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d. 250 (2006).

A balancing test is consistent with the plain language of the Fourth Amendment, which does not actually require a warrant or warrant exception, but rather, prohibits unreasonable searches.

The State acknowledges, however, that the Court of Criminal Appeals declined to conduct a balancing test in *Villarreal*, holding instead that the mandatory blood draw must fall under a recognized warrant exception. *Villarreal*, 2014 Tex. App. LEXIS 1898, at *59-75.

**A traditional balancing test weighs in favor of the constitutionality of Section 724.012(b)(3)(B).**

The primary purpose of Section 724.012(b) is to save lives and decrease the number of casualties caused by drunken drivers. *Neesley v. State*, 239 S.W.3d 780, 785 (Tex. Crim. App. 2007). Mandatory draws identify intoxicated drivers, so that the State can remove them from the roads through administrative license revocations. Mandatory draws also promote safety through their deterrent effect.

The State also has a legitimate interest in preserving evidence, both for administrative licensing hearings and criminal prosecutions. Timely blood alcohol evidence is indisputably the most probative evidence of intoxication, far more so than subjective observations or field sobriety tests, or retrograde extrapolation. The Texas Legislature acted reasonably in passing a law that requires police to secure this evidence, in serious cases, before it dissipates.

Reasonableness is also shown in that the statute does not leave blood draws to the discretion of the officer on the scene. Instead, the circumstances requiring blood draws are clearly set out in the statute, which was enacted by the Legislature, which is itself a neutral and detached body. Clear guidelines also further the State's legitimate

interest in readily applicable rules for officers in the field, which are not subject to second-guessing months and years down the road.

The law is narrowly tailored in scope. The statute only allows one useable blood draw, and it only applies to drivers, who are arrested, based on probable cause, for driving, while intoxicated, on public roads. *Neesley*, 239 S.W.3d at 786; *State v. Mosely,* 348 S.W.3d 435, 444 (Tex. App.—Austin 2011, pet. ref'd).

The law also takes the gravity of the crime into consideration by mandating draws only in serious cases.

Additionally, the search specified by the statute (a blood draw) is reasonable because blood testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. *State v. Johnston*, 336 S.W.3d 649, 659-60 (Tex. Crim. App. 2011).

Also, blood tests are commonplace and involve virtually no risk, trauma, or pain, and the Supreme Court has stated time and again that a blood draw is a minimally intrusive search that does not constitute an unduly extensive imposition on an individual's privacy and bodily integrity. *See Schmerber*, 384 U.S. at 771; *Skinner* 489

U.S. at 625; *Winston v. Lee*, 470 U.S. 753, 761-62, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985); *South Dakota v. Neville*, 459 U.S. 553, 563, 103 s. Ct. 916, 74 L. Ed. 2d 748 (1983); *Breithaupt v. Abram*, 352 U.S. 432, 436-37, 77 S. Ct. 408, 1 L. Ed. 2d 448 (1957); *but see McNeely*, 133 S. Ct. at 1558.

The Transportation Code also limits who can draw blood and where it can be drawn. Tex. Transp. Code § 724.017; *Johnston*, at 661 (noting that Section 724.017 is reasonable under the Fourth Amendment).

Additionally, the law mandates testing only on people who are already under arrest. Arrestees have significantly diminished expectations of privacy. And arrestees are not free to leave, so the testing's interference with their freedom to move does not infringe on significant privacy interests. Drivers are likewise subject to extensive regulations and have a reduced expectation of privacy.

Finally, the defendant bears the burden of establishing that statutes are unconstitutional, courts presume that statutes are constitutional and resolve all reasonable doubts in favor of their constitutionality, and the mere fact that opinions regarding

constitutionality may differ is not a sufficient basis to strike down a statute. *Luquis v. State*, 72 S.W.3d 355, 363, 365-66 (Tex. Crim. App. 2002). The presumption of constitutionality afforded legislation should not to be disposed of lightly. Laws passed by elected representatives represent the will of the people. Of course, courts must safeguard against violations of the Constitution, but in determining what is "reasonable" under the Fourth Amendment, the fact that the Legislature has passed laws mandating these searches speaks volumes as to what the people of Texas believe is reasonable.

In sum, the search mandated by Section 724.012(b)(3)(B) is constitutionally reasonable, and the trial court erred in suppressing the blood evidence obtained pursuant to the statute.

The Court of Criminal Appeals stated in *Villarreal*, however, that a DWI suspect's privacy interest outweighs the State's interest in preventing drunk driving through warrantless searches. *Villarreal*, 2014 Tex. App. LEXIS 1898, at *67-69.

***Point Three: Alternatively, the blood draw evidence is admissible because the defendant is deemed to have consented to the taking of a specimen, per Tex. Transp. Code § 724.011(a).***

Under Tex. Transp. Code § 724.011(a), the defendant is deemed to have consented to the blood draw.

As a matter of statutory construction, the consent implied by Section 724.011(a) cannot be revoked. *Forte v. State*, 759 S.W.2d 128, 138-139 (Tex. Crim. App. 1988), *overruled on other grounds in McCambridge v. State*, 778 S.W.2d 70, 76 (Tex. Crim. App. 1989).

Additionally, implied consent is irrevocable because it is given in exchange for the privilege to drive on public roads. The defendant was driving pursuant to this bargain, but he wants to withdraw consent when convenient for him. Allowing him to withdraw his consent when the red and blue lights come on would render this exchange a one-way street for the benefit of the defendant.

Finally, irrevocable implied consent can satisfy the consent exception to the warrant requirement. *See, e.g., United States v. Herzbrun*, 723 F.2d 773, 776 (11th Cir. 1984) (regarding airport screening searches); *United States v. De Angelo*, 584 F.2d 46, 48 (4th

Cir. 1978) (same); *United States v. Spriggs*, 827 F. Supp. 372, 375 (E.D. Va. 1993) (regarding prison visitor searches).

In sum, the defendant is deemed to have consented to the blood draw, and he cannot withdraw that consent. Since consent is a well-established exception to the warrant requirement, the trial court erred in suppressing the blood draw evidence.

The Court of Criminal Appeals held in *Villarreal*, however, that implied consent that has been withdrawn by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires. *Villarreal*, 2014 Tex. App. LEXIS 1898, at *34-37.

## Point Four: Assuming, arguendo, that the blood draw is unconstitutional, the Texas exclusionary rule still does not bar admission of the evidence.

The Texas exclusionary rule is codified in Tex. Code Crim. Proc. art. 38.23, which states:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.
>
> (b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

The evidence is not barred by article 38.23 because the police officer did not obtain the evidence in violation of the Constitution because, at the time the evidence was obtained, Texas case law clearly held that alcohol dissipation alone constituted exigent circumstances in DWI cases. *See Aliff v. State*, 627 S.W.2d 166, 170 (Tex. Crim. App. 1982); *and State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2000, pet. ref'd) (stating, "It is a well-settled fact that alcohol in the blood dissipates quickly constitutes exigent circumstances"). Thus, at the time of the blood draw in this case, the search clearly fell under the exigent circumstances exception, which means the police did not obtain the evidence in violation of the Fourth Amendment, which means the Texas exclusionary rule does not apply.

To be clear, the State is not arguing for a *good faith exception* to article 38.23. Rather, the State is arguing that article 38.23 *does not apply* because the officer did not obtain the evidence in violation of the law.[5]

The State's argument may appear to be a backdoor good faith argument, but the argument is in line with other statutory construction cases that have held that Article 38.23 does not apply when the evidence was not actually obtained in violation of the law. *See State v. Johnson*, 871 S.W.2d. 744, 750-51 (Tex. Crim. App. 1994) (no exclusion when there is attenuation of taint); *Wehrenberg v. State*, 416 S.W.3d 458, 467-70 (Tex. Crim. App. 2013) (no exclusion when there is an independent source).

In other words, the defendant cannot backdate a change in law to exclude evidence. To do so would twist the plain language of the statute because the evidence was not actually "obtained" in violation of the law. Rather, it was obtained in compliance with the law, which later changed.

---

[5] The State will argue that there are applicable good faith exceptions to the *federal* exclusionary rule, below, but this is distinct from its arguments regarding the Texas exclusionary rule.

Some courts have held that there was no change in the law and that *McNeely* merely clarified existing constitutional law. That may be true in other jurisdictions, but it is not true in Texas. In Texas, case law had clearly established a *per se* exigency in DWI cases. *See Aliff*, 627 S.W.2d at 170; *Laird*, 38 S.W.3d at 713. *McNeely* specifically granted certiorari to resolve the split of authority among states on the question of whether the natural dissipation it the bloodstream establishes a *per se* exigency. *See McNeely*, 133 S. Ct. at 1558. *McNeely* decided that there is no *per se* exigency. Thus, *McNeely* clearly overturned (i.e., changed) the law in several jurisdictions, including Texas. *Cf. State v. Adkins*, 433 N.J. Super. 479, 484-93, 81 A.3d 680 (App. Div. Dec. 20, 2013) (stating that *McNeely* dramatically changed the legal landscape when the Supreme Court issued a new search and seizure rule that was more restrictive than state court precedent, and holding that the State was not seeking to admit the fruits of unlawful police conduct because the police fully complied with the law in effect at the time they acted).

In conclusion, the State asks this Court to hold that Article 38.23 does not bar admission of evidence when the police scrupulously

adhered to the statutes and Constitutional case law that were in effect at the time of the search because, in such a case, the evidence was not actually obtained in violation of the law.

### *Point Five: The federal exclusionary rule does not bar admission of the evidence either.*

The purpose of the judicially-created federal exclusionary rule is to safeguard Fourth Amendment rights by deterring police misconduct. *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987). With this purpose in mind, the Supreme Court has created good faith exceptions.

### The police relied in good faith on a statute.

One exception is when an officer acts in good faith reliance on a statute that is later held to be unconstitutional, because "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment by an officer who has simply fulfilled

his responsibility to enforce the statute as written." *Krull*, 480 U.S. at 349-50.

In this case, the officer relied on the mandatory blood draw statute in Section 724.012(b)(3)(B). Moreover, the law was not "clearly unconstitutional." Indeed, Texas's police officers, prosecutors, defense attorneys, and judges have had mandatory blood draw cases for years without questioning their constitutionality. Therefore, under *Krull*, the federal exclusionary rule does not bar admission of the evidence, and the trial court erred in granting the motion to suppress.

**The police acted in good faith reliance on binding appellate precedent.**

Another exception applies when the police act in good faith reliance on binding precedent, because "It is one thing for the criminal to go free because the constable has blundered. It is quite another to set the criminal free because the constable has scrupulously adhered to governing law. Excluding evidence in such cases deters no police misconduct and imposes substantial social

costs." *Davis v. United States*, 564 U.S. \_\_\_, 131 S. Ct. 2419, 2423-24, 2434, 180 L. Ed. 285 (2011).

The blood draw in this case was done prior to the Supreme Court's decision in *McNeely*. At that time, Texas case law held that dissipation alone constituted exigent circumstances in DWI cases. *Aliff v. State*, 627 S.W.2d 166, 170 (Tex. Crim. App. 1982); *State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2000, pet. ref'd). Exigency is an established exception to the warrant requirement, so the search in this case was constitutional under binding Texas precedent at the time it was done. Therefore, under *Davis*, the good faith exception for reliance on precedent applies, and the trial court erred in granting the motion to suppress. *See People v. Youn*, 2014 Cal. App. LEXIS 799 (Cal. App. 2d Dist. Aug. 15, 2014) (applying the good faith exception for reliance on state court precedent to pre-*McNeely* blood draws); *United States v. Brooks*, No. PWG-14-0053, 2014 U.S. Dist. LEXIS 67417, at *5-15 (D. Md. May 16, 2014) (mem. op.) (same).

## Prayer

The State asks this Court to sustain its points of error, reverse the trial court's order suppressing the results of the blood analysis, and remand this case to the trial court for further proceedings.

Respectfully submitted,

**Rosemary Lehmberg**
District Attorney
Travis County

**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4206
Angie.Creasy@co.travis.tx.us
AppellateTCDA@co.travis.tx.us

28

## Certificate of Compliance and Service

I hereby certify that this letter contains 5,118 words, based upon the computer program used to generate this letter and excluding words contained in those parts of the letter that Texas Rule of Appellate Procedure 9.4(i) exempts from inclusion in the word count, and that this letter is printed in a conventional, 14-point typeface.

I further certify that, on the 31st day of December, 2014, a true and correct copy of this letter was served, by U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the Appellee's attorney, John De la Vina, Attorney at Law, 702 Rio Grande, Austin, Texas 78701.

**Angie Creasy**