PD-1423-15

PD-1423-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/5/2015 11:12:53 AM
Accepted 11/5/2015 3:03:52 PM
ABEL ACOSTA
CLERK

NO. _____ PD

IN THE

COURT OF CRIMINAL

APPEALS

OF TEXAS

_____

**EX PARTE**

**TULIO WILFREDO ESCOBAR**

*Petitioner,*

_____

Petition in Cause No. 1329944 from the
351ST District Court of Harris County, Texas and
the Court of Appeals for the
1ST District of Texas

_____

**PETITION FOR DISCRETIONARY REVIEW**

_____

TOM ABBATE
440 LOUISIANA ST, STE 200
HOUSTON, TX 77002
T: 713.223.0404
F: 800.501.3088
tom@tomabbatelaw.com
SBOT # 24072501

ATTORNEY FOR PETITIONER

FILED IN
COURT OF CRIMINAL APPEALS

November 5, 2015

ABEL ACOSTA, CLERK

## IDENTITIES OF PARTIES AND COUNSEL

PETITIONER:                                MR. TULIO ESCOBAR

PRESIDING JUDGE AT PLEA:       HON. SUZANNE STOVALL
351ST District Court
Harris County Criminal Justice Center
1201 Franklin, 14th Floor
Houston, Texas 77002
(713) 755-5620

PROSECUTOR AT PLEA:          MR. L. BAILY
Assistant District Attorney
Harris Co District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5800

PLEA COUNSEL:                   MR. RIGOBERTO RODRIGUEZ
2120 S. Wayside
Houston Texas 77023
(713) 921-1144

HABEAS COUNSEL:               MR. JUSTIN HARRIS
405 Main St. Ste 450
Houston, Texas 77002
(713) 222-6102

MR. TOM ABBATE
440 Louisiana, Ste 200
Houston, Texas 77002
(713)-223-0404

HABEAS COUNSEL FOR STATE:    MS. LISA COLLINS
Assistant District Attorney
Harris Co District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5800

PRESIDING JUDGE ON HABEAS:        HON. MARK KENT ELLIS
351ST District Court
Harris County Criminal Justice Center
1201 Franklin, 14th Floor
Houston, Texas 77002
(713) 755-5620

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ........................................................2

INDEX OF AUTHORITIES.............................................................................5

STATEMENT REGARDING ORAL ARGUMENT ................................................7

STATEMENT OF THE CASE...........................................................................7

STATEMENT OF PROCEDURAL HISTORY........................................................8

QUESTION PRESENTED FOR REVIEW ...........................................................9

REASON FOR REVIEW ................................................................................9

PRAYER FOR RELIEF ................................................................................16

CERTIFICATE OF SERVICE .........................................................................17

CERTIFICATE OF COMPLIANCE...................................................................18

APPENDIX................................................................................................18

# INDEX OF AUTHORITIES

Cases

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982)............................................................ 10, 11

*Arizona v. Gant*, 556 U.S. 332 (2009) ........................................................................... 10

*Arreola v. State*, 207 S.W.3d 387 (Tex. App.—Houston [1st Dist.] 2006) ................................. 14

*Aviles v. State*, 04-11-00877-CR (Tex. App.— San Antonio 2014)........................................... 13

*Aviles v. State*, 385 S.W.3d 110 (Tex. App.— San Antonio 2012) ................................. 11, 12, 15

*Aviles v. Texas*, 134 S.Ct. 902 (2014) ........................................................................ 11, 12, 15

*Beeman v. State* 86 S.W.3d 613 (Tex. Crim. App. 2002)............................................................ 12

*Boykin v. Alabama*, 395 U.S. 238 (1969) ...................................................................... 13

*Brady v. United States*, 397 U.S. 742 (1970)........................................................................ 13

*Edwards v. State,* 921 S.W.2d 477 (Tex. App.—Houston [1st Dist.] 1996) .............................. 14

*Ex parte Escobar*, 01-15-00154-CR (Tex. App. – Houston [1st Dist.] October 6, 2015)............. 16

*Ex parte Karlson*, 282 S.W.3d 118 (Tex. App.—Fort Worth 2009) ........................................... 14

*Ex parte Morrow*, 952 S.W.2d 530 (Tex. Crim. App. 1997)................................................ 14, 16

*Kniatt v. State*, 206 S.W.3d 657 (Tex. Crim. App. 2006)........................................................... 13

*Martinez v. State*, 981 S.W.2d 195 (Tex. Crim. App. 1998) .................................................. 13

*Missouri v. McNeely*, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013)...................................... 10, 11, 16

*Schmerber v. California*, 384 U.S. 757 (1966) ....................................................... 10, 15

*State v. Laird*, 38 S.W.3d 707 (Tex. App.—Austin 2000) ......................................................... 11

*Walter v. State*, 28 S.W.3d 538 (Tex.Crim.App. 2000)................................................................ 10

*Weems v. State*, 2014 WL 2532299 .............................................................................. 13

*Wiede v. State*, 214 S.W.3d 17 (Tex.Crim.App. 2007)................................................................ 10

Statutes

Tex. Transp. Code Ann. § 724.012................................................................................. 15

Rules

TEX. R. APP. P. 44.2......................................................................................................... 10, 16

Constitutional Provisions

U.S. CONST. amend. IV ....................................................................................................... 10

NO. _____ PD

IN THE

COURT OF CRIMINAL

APPEALS

OF TEXAS

_____

**EX PARTE**

**TULIO WILFREDO ESCOBAR**

*Petitioner,*

_____

Petition in Cause No. 1329944 from the
351ST District Court of Harris County, Texas and
the Court of Appeals for the
1ST District of Texas

_____

**PETITION OF DISCRETIONARY REIVEW
TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL
APPEALS OF TEXAS**

Tulio Escobar, petitions the Court to review the judgment affirming
The denial of his Application for Writ of Habeas Corpus
Pursuant to Article 11.072 of the Texas Code of Criminal Procedure

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would assist to resolve whether the evidence was legally sufficient to support the conviction obtained against the Petitioner in this case.

## STATEMENT OF THE CASE

On May 2, 2012, Petitioner pleaded guilty to the third-degree felony offense of driving while intoxicated–third offense. Pursuant to an agreed plea bargain, the trial court assessed Petitioner's punishment at five years' confinement in the Institutional Division of the Texas Department of Criminal Justice and ten days' confinement in the Harris County jail, but suspended confinement and placed Petitioner on community supervision for three years.

On October 6, 2014, the State filed a motion to revoke Petitioner's community supervision on the grounds that Petitioner violated the terms of his supervision by: (1) driving or operating a motor vehicle while his license was suspended and driving or operating a motor vehicle on two separate occasions without a valid driver's license, as evidenced by Petitioner's admission to a polygraph examiner; (2) driving or operating a motor vehicle on two separate occasions without a valid driver's license, as evidenced by Petitioner's admission to his community supervision officer; and (3) failing to maintain financial responsibility.

Petitioner filed an application for writ of habeas corpus on November 12, 2014, alleging that: (1) the motion to revoke violated his Fifth Amendment right

against self-incrimination; (2) his guilty plea was involuntary due to a Fourth Amendment violation; and (3) his plea counsel was ineffective because he allowed Escobar to enter an involuntary plea.

## STATEMENT OF PROCEDURAL HISTORY

Based on the record and the affidavits submitted, the habeas court found that Petitioner's plea was voluntary and that Petitioner failed to demonstrate that his Fifth Amendment right against self-incrimination was violated because there was no evidence that Petitioner invoked this right.

The court of appeals rendered its decision affirming Petitioner's conviction on October 6, 2015. Petitioner did not file a motion for rehearing, and the decision of the court of appeals became its final ruling on October 21, 2015. This petition was then filed with the clerk of the court of appeals within 30 days after such final ruling.

## QUESTION PRESENTED FOR REVIEW

*Was Petitioner's plea involuntary due to the illegality of the seizure in light of Missouri v. McNeely?*

## REASON FOR REVIEW

**The Law Regarding the Fourth Amendment Generally**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007). The Supreme Court has held that a warrantless search of the person is reasonable only if it falls within a recognized exception. *See United States v. Robinson*, 414 U.S. 218, 224 (1973); *Arizona v. Gant*, 556 U.S. 332, 338 (2009); *Walter v. State*, 28 S.W.3d 538, 541 (Tex.Crim.App. 2000). Exigent circumstances is one such well-recognized exception. *Missouri v. McNeely*, 133 S.Ct. 1552, 1562, 185 L.Ed.2d 696 (2013). If an appellate court determines that a defendant's Fourth Amendment rights were violated, then it must reverse the judgment unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

**The Law Regarding Exigent Circumstances and Blood Specimens Obtained Without a Warrant in DWI Investigations**

The taking of a blood sample is a search and seizure under both the federal and Texas constitutions. *Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982). However, under certain circumstances, a blood sample taken without a warrant is not an unreasonable search and seizure, and therefore comports with constitutional requirements. *Schmerber v. California*, 384 U.S. 757, 770–71 (1966). Police officers may constitutionally obtain a blood sample without a warrant or consent if they have probable cause, exigent circumstances, and a reasonable method of extraction. *Id.*; *see Aliff*, 627 S.W.2d at 169– 70). The fact that alcohol dissipates quickly in the blood has been held to constitute exigent circumstances. *Id.* at 170 (holding that taking a blood sample from a person under arrest does not violate the constitution when officers have probable cause to arrest because alcohol dissipates from the blood stream at a rapid rate); *State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2000, pet. ref'd).

The United States Supreme Court recently held, however, that the fact that alcohol rapidly dissipates from the bloodstream does not create a per se exigent circumstance. *McNeely*, 133 S.Ct. at 1562, 185 L.Ed.2d 696. Instead, the dissipation of alcohol may be a factor, among others, in the exigency analysis under the larger totality of the circumstances test. *See id*. Specifically, the Court held that the trial

10

court should conduct a "careful case-by-case assessment of exigency and ... [that i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561.

**The Law Regarding Mandatory Blood Specimens Obtained Without a Warrant in DWI Investigations**

Further, the mandatory blood draw provision of the Transportation Code has been previously used to justify involuntary, warrantless blood draws. *See Aviles v. State*, 385 S.W.3d 110, 116 (Tex. App. — San Antonio 2012), *vacated*, 134 S.Ct. 902 (2014). In that case, the Court of Appeals held that a warrantless blood draw of a DWI suspect that was conducted according to the prescriptions of the Transportation Code did not violate the suspect's rights under the Fourth Amendment. In so holding, it quoted *Beeman v. State* for the proposition that the implied consent law allows officers to draw blood "in certain limited circumstances even without a search warrant." 86 S.W.3d 613, 615 (Tex. Crim. App. 2002); *Aviles*, 385 S.W.3d at 115. The court reasoned that "[t]his situation, as outlined in section 724.012, is one of the 'circumstances' the Texas Court of Criminal Appeals has held where blood may be drawn without a search warrant." *Id.* at 116 (*citing Beeman*, 86 S.W.3d at 616).

11

The court concluded that whether the officer could have obtained a warrant before authorizing the blood draw was "immaterial given the mandate of section 724.012(b)(3)(B)." *Id*. at 116. Thus, the court held that "the warrantless seizure of Aviles's blood was conducted according to the prescriptions of the Transportation Code, and without violating Aviles's Fourth Amendment rights." *Id*. The Texas Court of Criminal Appeals denied Aviles's petition for discretionary review.

However, on January 13, 2014, the Supreme Court granted certiorari and vacated the Court of Appeals' judgment. *Aviles v. Texas*, 134 S.Ct. 902 (2014). It then remanded the case "for further consideration in light of *Missouri v. McNeely*." *Id*. On remand, the Court of Appeals held "[l]ooking at the mandatory blood draw statute and the implied consent statute, we held in *Weems* these statutes clearly create categorical or per se rules the *McNeely* court held were not permissible exceptions to the Fourth Amendment's warrant requirement." *Aviles v. State*, 04-11-00877-CR (Tex. App. — San Antonio August 6, 2014) (*citing Weems v. State*, 2014 WL 2532299, at *8).

**The Law Regarding Voluntariness of Pleas Generally**

A guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) ).

12

Accordingly, due process of law requires that guilty pleas be knowingly, intelligently, and voluntarily made. *Kniatt*, 206 S.W.3d at 664. To be "voluntary," a guilty plea must be the expression of the defendant's own free will and not obtained by threats, misrepresentations, or improper promises. *Id.* (*citing Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)). When assessing the voluntariness of a guilty plea, courts examine the entire record and consider all of the relevant circumstances surrounding the plea. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curium).

A record that indicates that a trial court properly admonished a defendant presents a prima facie showing that the guilty plea was made voluntarily and knowingly. *See Id*; *Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.). When the record presents a prima facie showing that the applicant entered their plea voluntarily and knowingly, the burden shifts to the defendant to show that they entered the plea without understanding the consequences of the plea. *Edwards v. State,* 921 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

The test for determining the validity of a plea is whether it represents a voluntary and intelligent choice among alternative courses of action open to the defendant. *Ex parte Karlson*, 282 S.W.3d 118, 129 (Tex. App.—Fort Worth 2009, pet. ref'd). A guilty plea made by a defendant fully aware of the plea's direct

consequences must stand unless it was induced by threats, misrepresentations, or promises that are by their nature improper. *Ex parte Morrow*, 952 S.W.2d 530, 534–35 (Tex. Crim. App. 1997), *cert. denied*, 525 U.S. 810 (1998).

**Analysis**

As stated previously, a deputy with Harris County Constable Precinct One arrested Petitioner for Driving While Intoxicated after Petitioner was found to be asleep while seated behind the steering wheel of his vehicle with the engine running. Petitioner was promptly arrested without being offered the opportunity to perform any Standardized Field Sobriety Tests. After being transported to the police station, deputies discovered that Petitioner had been twice previously convicted of the offense of Driving While Intoxicated. Subsequently, and pursuant to Texas Transportation Code Section 724.012, a "mandatory" blood draw was conducted on Applicant without his consent and without a valid search warrant. See Tex. Transp. Code Ann. § 724.012(b)(1). Analysis of Petitioner's blood revealed a blood alcohol content in excess of .08g/100mL. No other evidence of Petitioner's intoxication was obtained.

Although *McNeely* had not been decided at the time Petitioner entered his plea, it is not new law that may or may not be retroactively applied. Rather, this ruling is at most a clarification of existing law. *Schmerber*, 384 U.S. at 770–71. For the last forty-eight years, it has been constitutionally permissible for police officers

14

to obtain a blood sample without a warrant or consent if they have probable cause, exigent circumstances, and a reasonable method of extraction. *Id.* However, Texas courts have erroneously assumed that the mandatory draw provisions of the Transportation Code comported with constitutional requirements of the Fourth Amendment.

Further, as the *Aviles* case's procedural history demonstrates, the Supreme Court's ruling in *McNeely* applies to convictions obtained *prior to its 2013* decision. *See Aviles v. State*, 385 S.W.3d 110, 116 (Tex. App. — San Antonio 2012), *vacated*, 134 S.Ct. 902 (2014)(emph added). Therefore, because *McNeely* is merely a clarification designed to correct the misconceptions of various state courts, its holding entitles Applicant to relief in this case.

The Court of Appeals held that Petitioner waived this issue as no motion to suppress was ever filed. *Ex parte Escobar*, 01-15-00154-CR (Tex. App. – Houston [1st Dist.] October 6, 2015). However, that holding only serves to highlight the problem with the case at bar, namely, that Petitioner's plea was rendered involuntary due to the erroneous assumptions of the appellate courts of this state. If Petitioner had filed a motion to suppress, it would have been denied as the court would have held that the evidence was seized pursuant to an exception to the warrant requirement. Had Petitioner proceeded to trial, been convicted, and then appealed that denial, as the Court of Appeals argued he should have, reversal would only have

15

come if the *McNeely* clarification had come prior to the Court of Appeals' opinion, or the denial of a subsequent petition for discretionary review.

The Court of Appeals' holding of waiver, therefore, implicitly dismisses the violation of Petitioner's, as well as many others', Fourth Amendment rights as irrelevant. This is fundamentally unfair as the defendants in these cases were not fully aware of the direct consequences of their plea, namely, that they were giving up valid rights to challenge evidence seized in violation of the Fourth Amendment. *Morrow*, 952 S.W.2d at 534–35; *McNeely*, 133 S.Ct. at 1562, 185 L.Ed.2d 696.

Finally, the threshold for harm stemming from a Fourth Amendment violation is that reversal is required unless it is determined beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a). Petitioner argues that rule should apply to the case at bar. Under the clarification embraced in *McNeely*, Applicant's Fourth Amendment rights were clearly violated. Further, that violation clearly contributed to his conviction as it was the only evidence of intoxication obtained. Moreover, had this violation not occurred, and had Texas law not promoted an invalid exception to the warrant requirement, Petitioner would not have entered a plea of guilty in this case.

## PRAYER FOR RELIEF

ACCORDINGLY, this Court should GRANT this PETITION FOR DISCRETIONARY REVIEW and ORDER briefs on the merits to answer the

16

question of whether the evidence against the Petitioner was legally sufficient to support his conviction.

Petitioner further prays for all relief to which he may be entitled.

Respectfully submitted,

_____
TOM ABBATE
440 LOUISIANA ST, STE 200
HOUSTON, TX 77002
T: 713.223.0404
F: 800.501.3088
tom@tomabbatelaw.com
SBOT # 24072501

ATTORNEY FOR PETITIONER

## CERTIFICATE OF SERVICE

This is to certify that on the day of NOVEMBER 5, 2015 a true and correct copy of the above and foregoing Petition for Discretionary Review was served on the Harris County District Attorney's Office, 1201 Franklin, Suite 600, Houston, Texas 77002, by FAX (713.755.5809).

_____
TOM ABBATE

17

**CERTIFICATE OF COMPLIANCE**

I hereby certify that there are 2919 words contained in this document.

_____
TOM ABBATE

# APPENDIX



In The

## Court of Appeals

For The

## First District of Texas

---

### NO. 01-15-00154-CR

---

### EX PARTE TULIO WILFREDO ESCOBAR, Appellant

---

On Appeal from the 351st District Court
Harris County, Texas
Trial Court Case No. 1329944-A

---

## MEMORANDUM OPINION

Appellant, Tulio Wilfredo Escobar, appeals from the habeas court's denial of his application for writ of habeas corpus. Escobar argues that the habeas court abused its discretion by denying his application because (1) his plea was involuntary, and (2) the motion to revoke his community supervision violated his Fifth Amendment right against self-incrimination. We affirm.

19

## Background

On May 2, 2012, Escobar pleaded guilty to the third-degree felony offense of driving while intoxicated–third offense. Pursuant to an agreed plea bargain, the trial court assessed Escobar's punishment at five years' confinement in the Institutional Division of the Texas Department of Criminal Justice and ten days' confinement in the Harris County jail, but suspended confinement and placed Escobar on community supervision for three years.

On October 6, 2014, the State filed a motion to revoke Escobar's community supervision on the grounds that Escobar violated the terms of his supervision by: (1) driving or operating a motor vehicle while his license was suspended and driving or operating a motor vehicle on two separate occasions without a valid driver's license, as evidenced by Escobar's admission to a polygraph examiner; (2) driving or operating a motor vehicle on two separate occasions without a valid driver's license, as evidenced by Escobar's admission to his community supervision officer; and (3) failing to maintain financial responsibility.

Escobar filed an application for writ of habeas corpus alleging that: (1) the motion to revoke violated his Fifth Amendment right against self-incrimination; (2) his guilty plea was involuntary due to a Fourth Amendment violation; and (3) his plea counsel was ineffective because he allowed Escobar to enter an involuntary plea.

2

No evidentiary hearing was held on Escobar's application. Although Escobar did not file any affidavits in support of his application, the State submitted sworn affidavits for the habeas court's consideration from Escobar's plea counsel and the polygraph examiner. The polygraph examiner averred in his affidavit that Escobar admitted that he had driven in violation of his community supervision during his August 29, 2014 polygraph session. He further averred that Escobar did not invoke his Fifth Amendment privilege during that session, ask for an attorney, or refuse to speak with the examiner.

Escobar's plea counsel averred in his affidavit that after he discussed the relevant case law with Escobar, counsel "strongly encouraged" Escobar to go forward with a motion to suppress all evidence obtained as a result of the warrantless blood draw. Counsel told Escobar that he thought that Escobar had a "good case" and that even if he lost on the motion, he had a "good chance of winning" on appeal. Counsel further averred that he informed Escobar that the State was offering three years' community supervision, but that if Escobar filed a motion to suppress and lost, the State would insist on a longer period of supervision. When Escobar learned that three years was the shortest period of community supervision that the State was willing to offer, Escobar informed his counsel that he did not want to pursue a motion to suppress and wanted to accept the State's offer. The judgment, which Escobar attached to his application, recites

3

that the trial court "admonished Escobar as required by law" and that "[i]t appeared to the [trial court] that [Escobar] . . . made the plea freely and voluntarily, and was aware of the consequences of this plea."

Based on the record and the affidavits submitted, the habeas court found that Escobar's plea was voluntary and that Escobar failed to demonstrate that his Fifth Amendment right against self-incrimination was violated because there was no evidence that Escobar invoked this right.

## Standard of Review

We review a trial court's ruling on a habeas corpus application for abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In reviewing a trial court's decision to deny habeas relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We afford almost total deference to the habeas court's findings of fact that are supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). We afford the same deference to the trial court's rulings on the application of the law to fact questions if the resolution of those ultimate questions turns on an evaluation of

4

credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d at 819. In such instances, we use an abuse of discretion standard. *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). However, if the resolution of those ultimate questions turns on an application of legal standards absent any credibility issue, we review the determination de novo. *Ex parte Peterson*, 117 S.W.3d at 819.

A habeas applicant bears the burden of establishing that the facts entitle the applicant to relief. *See Ex parte Morrow*, 952 S.W.2d 530, 534 (Tex. Crim. App. 1997); *Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.). One who seeks habeas corpus relief based on an involuntary guilty plea has the burden of showing that his plea was involuntary by a preponderance of the evidence. *Kniatt*, 206 S.W.3d at 664. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). "[T]he record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4, 90 S. Ct. at 1468 n.4. A person attacking the validity of his prior guilty plea as that plea is reflected in the written judgment "bears the burden of defeating the normal presumption that recitals in the written judgment are correct. Those written recitals are 'binding in the absence of direct proof of their falsity.'" *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim.

5

App. 2013) (quoting *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984)).

"A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Ex Parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). When a habeas applicant challenges a guilty plea based on ineffective assistance of counsel, we apply the two-pronged *Strickland* test. *See Murillo*, 389 S.W.3d at 926 (citing *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985)). To be entitled to relief, an applicant challenging his guilty plea based on ineffective assistance must establish that: (1) trial counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's ineffectiveness, the result of the proceeding would have been different. *See Moussazadeh*, 361 S.W.3d at 691; *Ex parte Roldan*, 418 S.W.3d 143, 145 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

### Fifth Amendment

In his application for writ of habeas corpus, Escobar argues that the State's reliance on his admissions of wrongdoing to the polygraph examiner violates his Fifth Amendment right against self-incrimination. The Fifth Amendment privilege, however, "generally is not self-executing" and a witness who desires its protection "'must claim it.'" *Minnesota v. Murphy*, 465 U.S. 420, 425, 104 S. Ct. 1136, 1141 (1984) (quoting *United States v. Monia*, 317 U.S. 424, 427, 63 S. Ct. 409, 410–11

6

(1943)); *see generally Dansby v. State*, 398 S.W.3d 233, 240–41 (Tex. Crim. App. 2013) (holding trial court abused its discretion by revoking defendant's community supervision based upon defendant's invocation of his Fifth Amendment right).

Here, the habeas court found that there was credible testimony from the polygraph examiner that Escobar admitted during his polygraph session that he had violated the terms of his supervision and that Escobar did not invoke his Fifth Amendment privilege during that session, ask for an attorney, or refuse to speak with the examiner. Based on this testimony, which was uncontroverted, the habeas court found that Escobar failed to demonstrate that he invoked his Fifth Amendment right against self-incrimination and thereby failed to establish that his right was violated.

Accordingly, we hold that the habeas court did not abuse its discretion by denying Escobar's application for writ of habeas corpus on this basis because Escobar failed to carry his burden of proving his entitlement to relief. *See Ex parte Morrow*, 952 S.W.2d at 534.

### Voluntariness of Plea Based on Fourth Amendment Violation

Escobar also argued in his application that his plea was involuntary because the warrantless blood draw violated the Fourth Amendment's protections against unlawful searches and seizures.

7

As in direct appeals, a party is required to preserve certain types of constitutional error in order to raise a complaint regarding the error in a habeas application. *See Garza v. State*, 435 S.W.3d 258, 261–62 (Tex. Crim. App. 2014); *Ex parte Jimenez*, 364 S.W.3d 866, 882 (Tex. Crim. App. 2012). To preserve a complaint for appellate review, a party must make a timely objection or motion stating the specific grounds for the complaint and obtain a ruling from the trial court. *See* TEX. R. APP. P. 33.1(a).

There was credible evidence presented to the habeas court demonstrating that Escobar was advised to file a motion to suppress all evidence obtained as a result of the warrantless blood draw. Escobar declined to do so because he did not want to risk a longer supervision period. By choosing the strategic option to accept a plea bargain rather than file a motion to suppress, Escobar forfeited his right to complain in a habeas application about the possibly unconstitutional process used to obtain the evidence against him. *See id.*; *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997); *see generally Brady*, 397 U.S. at 757, 90 S. Ct. at 1473 ("[A] voluntary plea of guilty intelligently made in the light of then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

8

Accordingly, we hold that Escobar failed to preserve this complaint for appellate review.

## Voluntariness of Plea Based on Ineffectiveness of Plea Counsel

In his application, Escobar also argued that his plea counsel "erroneously advised him that a motion to suppress would be futile" and that "[h]ad counsel correctly advised him that the seizure of evidence was subject to challenge, [Escobar] might not now be restrained of his liberty due to a constitutional violation." Escobar, however, did not present any testimony in support of these unverified allegations. On the contrary, Escobar's plea counsel testified in his affidavit that he "strongly encouraged" his client to go forward with a motion to suppress evidence obtained as a result of the warrantless blood draw because he thought that Escobar had a "good case" and that he advised Escobar that even if he lost on the motion, he had a "good chance of winning" on appeal. The habeas court found plea counsel's uncontroverted testimony credible. *See Ex parte Amezquita*, 223 S.W.3d at 367 (appellate courts afford almost total deference to habeas court's findings of fact that are based on evaluation of credibility and demeanor and supported by record).

Accordingly, we hold that the habeas court did not abuse its discretion by denying Escobar's application for writ of habeas corpus based on ineffective assistance because Escobar failed to prove that his counsel's performance fell

9

below an objective standard of reasonableness, as required by the first prong of *Strickland*. *See Moussazadeh*, 361 S.W.3d at 691.

## Conclusion

Finding no reversible error, we affirm the trial court's judgment. We dismiss any pending motions as moot.

## PER CURIAM

Panel consists of Justices Keyes, Massengale, and Lloyd.
Do not publish.   TEX. R. APP. P. 47.2(b).

10